# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RACHEL C. WILLIAMS, *on behalf of herself and others similarly situated*,<br><br>        Plaintiff,<br><br>v.<br><br>AMERICAN HONDA FINANCE CORP.,<br><br>        Defendant. | Civil Action No. 1:14-cv-12859-LTS<br><br>**Amended Class Action Complaint**<br><br><br>**Jury Trial Demanded** |

## Introduction

1.      Plaintiff, Rachel Williams, brings this class action against American Honda Finance Corp. ("Honda") on her own behalf and that of all others similarly situated, seeking declaratory, injunctive and monetary relief to remedy Honda's unlawful auto repossession and deficiency collection practices.

2.      Provisions of the Motor Vehicle Retail Installment Sales Act, M.G.L. c. 255B, §§ 20A, 20B ("RISA") and Uniform Commercial Code, c. 106, §§ 9-610 to 9-625 ("UCC") form a complementary scheme governing the repossession and subsequent sale of consumers' motor vehicles. Generally, the UCC repossession provisions govern, unless displaced by the more protective provisions of RISA. c. 255B, § 20A. Thus, RISA complements and enhances the UCC provisions applicable to consumers. *Id*. The provisions of RISA cannot be waived. M.G.L. 255B § 23.

3.      After repossession, both RISA and the UCC require creditors to send consumers a repossession notice that includes critical information about the borrower's rights, including a description of the potential liability for a deficiency. M.G.L. c. 255B, §§ 20A, 20B(d); c. 106, § 9-614.

4.      Under the UCC, borrowers are generally liable for a deficiency after repossession calculated by deducting the difference between the proceeds of the repossession sale and the amount owing on the loan.

5.      But RISA limits the deficiency a creditor can seek in two material ways. RISA expressly modifies the UCC deficiency calculation, requiring the creditor to deduct the *fair market value* of the vehicle, rather than the sale price, from the loan balance when calculating a deficiency. c. 255B § 20B(e)(1). And if the consumer owes $2,000 or less at the time of default, *no* deficiency may be collected. *Id.*

6.      Unlike other Massachusetts lenders, Honda flouts these protections. First, it uses form notices and form contracts that affirmatively misrepresent borrowers' rights after repossession, stating that upon the sale of the repossessed vehicle, the borrower shall be liable to Honda for a deficiency based on the difference between the sale price and the amount owing on the loan. Honda's notices make no mention of the fair market value calculation required by RISA.

7.      After it sells the vehicles, Honda calculates the alleged deficiency using the sale price rather than the fair market value. Honda then seeks to collect these illegally inflated balances.

8.      Honda also reports the inflated balances as valid debts on consumers'

credit reports.

9.     The effect on Massachusetts consumers is significant: fair market values typically exceed repossession sale prices by 25% percent or more.

10.     Honda's practices affect hundreds or perhaps thousands of Massachusetts consumers. Honda is one of the major vehicle financing entities in the United States, and, on information and belief, has calculated its deficiencies in the manner described in this Complaint with respect to hundreds of Massachusetts consumers in the class period. As more particularly described below, Honda sent Ms. Williams and similarly situated Massachusetts consumers a form Post-Repossession Notice which misstates important consumer rights provided by the UCC and RISA, including the borrower's true liability for a deficiency following sale of the vehicle. UCC § 9-614(1)(B). Honda's notice states that the deficiency will be based on the sale price. As described above, § 20B(e)(1) of RISA expressly limits a deficiency to the difference between the fair market value and the outstanding loan amount.

11.     Honda also sent Ms. Williams and similarly situated Massachusetts consumers, from whom it sought a deficiency after sale, a form Deficiency Demand Notice that seeks more than RISA allows. The form Demand Notice seeks a purported deficiency balance calculated upon the difference between the amount realized from the sale of the repossessed vehicle and the outstanding debt on the loan, contrary to § 20B(e)(1). Honda then sought to collect this inflated deficiency balance from Ms. Williams and putative class members.

12.     By misrepresenting borrowers' rights, misrepresenting the amounts

legally owed, and seeking and collecting illegally inflated amounts, Honda has violated the UCC and RISA. Honda's actions also constitute violations of M.G.L. c. 93A.

**Parties**

13.     Plaintiff, Rachel Williams, is an adult residing in Norfolk County.

14.     Defendant, American Honda Finance Corp., is a California corporation with its principal place of business at 20800 Madrona Avenue, Torrance, California. It is a wholly owned subsidiary of American Honda Motor Co., Inc. At all times material hereto, Honda was engaged in the business of providing financing to purchasers of automobiles in Massachusetts.

**Jurisdiction and Venue**

15.     This Court has jurisdiction to grant the relief sought pursuant to M.G.L. c. 214, §§ 1, 5; c. 212 § 3, and c. 231A, § 1.

16.     Venue lies in this county because Ms. Williams resides here and Honda does business here.

**Facts Pertaining To Ms. Williams's Transaction**

17.     On August 29, 2007, Ms. Williams entered into a motor vehicle retail installment sale contract ("RISC") for the purchase of a 2007 Honda Accord for $38,259, financing $26,407 of this amount. A copy of the RISC is attached as Exhibit A. The RISC provides that it will be governed by the laws of the Commonwealth of Massachusetts.

18.     Included in the RISC is a charge of $501.12 for a credit life insurance policy with a 72 month term.

19.     Also Included in the RISC is a charge of $1,076.07 for a credit disability

insurance policy with a 72 month term.

20.      The RISC states that "[i]f Seller repossesses the Vehicle, Seller can, … sell it and apply the money received to what Buyer owes. Proceeds of sale … will be applied to the unpaid sums owing under this Contract." *Id*., at p. 2. The RISC further states that "Buyer will be liable for any deficiency incurred" and "Seller has the right to a deficiency judgment … in accordance with applicable law." *Id*.

21.      On or about September 20, 2011, Honda caused Ms. Williams's automobile to be repossessed.

22.      On September 21, 2011, Honda sent Ms. Williams a notice (the "Post-Repossession Notice") advising her of the repossession and of its intent to dispose of the vehicle. A copy of the Post-Repossession Notice is attached as Exhibit B. This notice describes Ms. Williams's liability for a deficiency as the difference between the sale price, after paying Honda's costs, and the outstanding balance on the contract: "The money received from the sale (after paying our costs) will reduce the amount you owe. If the auction proceeds are less than what you owe, you will still owe us the difference." The notice does not mention the vehicle's fair market value.

23.      Honda subsequently sold the vehicle for $8,900, and so informed Ms. Williams by sending her a notice (the "Deficiency Demand Notice") dated November 1, 2011, advising her of the sale and of her ostensible obligation to pay a deficiency balance alleged to be $4,713.32. A copy of the Deficiency Demand Notice is attached as Exhibit C.

24.      Honda calculated the alleged deficiency balance by subtracting the

amount realized from the sale of the repossessed vehicle from the full amount owing under the contract, plus expenses. See Exhibit C.

25.     Honda is reporting this alleged deficiency on Ms. Williams's credit report as a valid debt in the amount of $13,479.

26.     According to the Kelley Blue Book, a periodically published trade publication containing estimates of the retail value of motor vehicles, and which is generally recognized in the motor vehicle sales business, in October 2011 the fair market value of Ms. Williams's vehicle was approximately $15,450, an amount $6,550 more than the sale price obtained by Honda.

27.     On January 6, 2014, Ms. Williams sent a demand for relief pursuant to c. 93A to Honda. Honda responded on January 31, 2014, refusing to offer any relief.

28.     On June 10, 2014 Ms. Williams sent a supplemental demand pursuant to M.G.L. c. 93A, §9(3) to Honda, demanding relief for Honda's practices, on behalf of herself and a class of similarly situated individuals in Massachusetts. A copy is attached as Exhibit E. On July 8, 2014 Honda responded to the supplemental demand and failed to offer any relief to Ms. Williams or the class.

## Applicable Law

29.     The Post Repossession Notice Honda sent Ms. Williams is jointly required by RISA (c. 225B § 20B) and the UCC (c. 106, §§ 9-610 to 9-625). These provisions of Massachusetts law regulate the repossession and disposition of motor vehicles financed under Retail Installment Sales Agreements. To protect consumers' valuable property interests in financed vehicles, RISA and the UCC impose strict and mandatory

requirements on sellers and holders of Retail Installment Sales Agreements, such as

Honda, following a repossession.

30.    RISA provides, in pertinent part in c. 255B § 20(B)(d) that its provisions

must be read together with the UCC repossession provisions:

> (d) The creditor may after gaining possession sell or otherwise dispose of the
> collateral. *Unless displaced by the provisions of this section* and section twenty A the
> rights and obligations of the parties, including the redemption and disposition of
> the collateral shall be governed by the provisions of Part 6 of Article 9 of chapter
> 106. (emphasis added)

31.    Before a creditor may sell a repossessed vehicle, the UCC requires that it

timely send the borrower "a reasonable authenticated notification of disposition," a

Post-Repossession Notice as described in this Complaint. UCC, § 9-611.

32.    Section 9-614(1), applicable solely to consumer transactions, provides, in

pertinent part, that "[a] notification of disposition must provide the following

information":

> (A) the information specified in Section 9-613(l); and

> (B) a description of any liability for a deficiency of the person to which the
> notification is sent… .

33.    Section 9-614(3) contains a proposed form repossession notice, which, if

used, is sufficient to ensure compliance with the UCC, even if it contains "errors in

information **not required by paragraph (1)**, unless the error is misleading with respect

to rights arising under this article." UCC § 9-614(5) (emphasis added).

34.    The form notice found in § 9-614(3) contains numerous blank spaces

where the creditor has to fill in the information specific to its own transaction, including

the following description of any liability for a deficiency: "If we get less money than you owe, you (will or will not, as applicable) still owe us the difference."

35.     Before a creditor may seek a deficiency, § 9-616(a) provides that the creditor must send the consumer "a writing that … provides an explanation in accordance with subsection (c) of how the secured party calculated the surplus or deficiency…." UCC, §§ 9-616(a)(1)(B), (D).

36.     RISA provides, in c. 255B § 20B(e)(1), that the creditor must calculate the deficiency based upon the difference between the outstanding debt and the vehicle's fair market value:

> (e)(1) If the unpaid balance of the consumer credit transaction at the time of default was two thousand dollars or more the creditor shall be entitled to recover from the debtor the deficiency, if any, resulting from *deducting the fair market value of the collateral from the unpaid balance due* and shall also be entitled to any reasonable repossession and storage costs, provided he has complied with all provisions of this section. (emphasis added)

37.     RISA further provides, in § 20(B)(e)(2), that recognized evaluation reports such as the NADA Used Car Guide or Kelley Blue Book shall be presumed to establish fair market value:

> (e)(2) In a proceeding for a deficiency the fair market value of the collateral shall be a question for the court to determine. Periodically published trade estimates of the retail value of goods shall, to the extent they are recognized in the particular trade or business, be presumed to be the fair market value of the collateral.

38.     Other national lenders comply with RISA's deficiency provision. For example, WFS's repossession notice expressly states: "We may proceed against you for any deficiency that may exist on your debt after applying the f*air market value of the*

*vehicle* towards our repossession and storage charges and your debt, unless your unpaid account balance was $2,000 or less at the time of your default." (emphasis added). A copy of the WFS notice is attached as Exhibit D.

39.     A creditor's failure to comply with the mandatory notice requirements of RISA and UCC §§ 9-613 and 9-614 renders it liable for statutory damages in the amount of the finance charge and 10% of the principal borrowed, pursuant to c. 106, § 9-625.

40.     Failure to comply with UCC § 9-616 subjects the creditor to liability for statutory damages of $500 if the noncompliance is part of a pattern or practice, pursuant to c. 106, § 9-625(e)(5).

## Class Allegations

41.     On information and belief, the RISC, attached as Exhibit A, is the standard form of Motor Vehicle Retail Installment Sale Agreement that Honda has entered into with Massachusetts consumers at all material times.

42.     On information and belief, the Post-Repossession Notice, attached as Exhibit B, or variants of it containing the deficiency calculation challenged in this Complaint, is the standard form of Post-Repossession Notice Honda has sent to Massachusetts consumers since at least April 4, 2010.

43.     On information and belief, the Deficiency Demand Notice, attached as Exhibit C, or variants of it containing the deficiency calculation challenged in this Complaint, is the standard form of Deficiency Demand Notice Honda has sent to Massachusetts consumers since at least April 4, 2010 as well.

44.     On information and belief, Honda's failure to send Ms. Williams and

similarly situated Massachusetts borrowers a Post-Repossession Notice and, where

applicable, a Deficiency Demand Notice compliant with the requirements of law, and

Honda's practice of calculating deficiency balances based on the difference between the

vehicle's sale price and the amount outstanding on the contract, without regard to the

fair market value requirement of RISA, is part of a pattern, or consistent with a practice,

of noncompliance.

45.     The class is composed of all Massachusetts residents who, since April 4,

2010:

(a)     have or had a RISC held by Honda;

(b)     had their motor vehicle repossessed in Massachusetts by Honda or its
agents and:

(i)     were sent a post-repossession notice which describes the liability
for a deficiency as the difference between the amount obtained at
the sale and the amount owed on the contract; and

(ii)    upon the sale of their vehicle, Honda calculated the alleged
deficiency by deducting the sale proceeds rather than the fair
market value of the vehicle from the outstanding loan balance;

(c)     have not obtained a discharge in bankruptcy applicable to any such RISC;
and

(d)     Honda has not obtained a deficiency judgment against such person.

46.     The class contains a subclass, the Deficiency Demand Subclass, comprised

of all those who meet the requirements of the class definition and who, since April 4,

2010:

were sent a post sale notice which states a deficiency balance calculated
upon the difference between the amount realized upon sale of the
repossessed vehicle and the full amount owing under the contract, instead

of the difference between the outstanding debt and the vehicle's fair market value.

47.     Based on Honda's loan volume and the number of auto loan defaults and auto repossessions resulting from that volume, the prospective class numbers in the thousands, making joinder of all members impractical. The exact size of the proposed class and the identity of the class members are readily ascertainable from Honda's business records.

48.     There are questions of law and fact common to the class, which predominate over any questions affecting only individual class members. The principal common issues with respect to the class are whether: Honda's form Post Repossession Notice(s) breaches its contract with class members; whether the Notice(s) violate the UCC and RISA; whether its practice of seeking deficiencies calculated upon the difference between the amount realized upon sale of the repossessed vehicle and the full amount owing under the contract breaches its contract with class members and violates RISA; and whether Honda's conduct violates Chapter 93A.

49.     There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of Honda's records, and the issues of liability are determinable entirely from the face of the operative documents.

50.     Ms. Williams's class claims are typical of those of the class she seeks to represent, and she will fairly and adequately protect and represent the interests of the class. There is no conflict between the claims of Ms. Williams as class representative and

the claims of the proposed class.

51.     A class action is superior to other methods for the fair and efficient

adjudication of this controversy. Because the damages suffered by the individual class

members may be relatively small compared to the expense and burden of litigation, it

would be impractical and economically unfeasible for class members to seek redress

individually. In addition, it is likely that most class members are unaware that they

have claims. Finally, the prosecution of separate actions by the individual class

members, even if possible, would create a risk of inconsistent or varying adjudications

with respect to the individual class members against Honda.

52.     Ms. Williams is represented by counsel competent and experienced in

both consumer protection and class action litigation.

### Causes Of Action

### Count I
### (Violation Of UCC § 9-614)

53.     Honda's Post-Repossession notice violates UCC § 9-614(1) because it does

not contain an accurate description of any liability for a deficiency of the person to

whom the notification is sent.

### Count II
### (Violations Of UCC § 9-616)
*On Behalf Of The Deficiency Demand Subclass Only*

54.     Honda's Deficiency Demand Notice violates UCC § 9-616(c)(5) because it

overstates the amount of the purported deficiency, as described throughout this

Complaint. In addition, it fails to accurately disclose, "the amount, in the aggregate or

by type, and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled..."

55.     Honda's failure to send Ms. Williams and subclass members the "explanation" of deficiency mandated by § 9-616 is part of a pattern, or consistent with a practice, of noncompliance with that statute.

**Count III
(Violations Of RISA § 20B)**

56.     Honda's Post-Repossession notice violates RISA § 20B(d) because it overstates the amount of the purported deficiency liability, as described in Counts I and II.

57.     Honda's Post-Repossession notice violates RISA § 20B(e)(1), as does its conduct, because it seeks deficiencies calculated upon the difference between the amount realized from the sale of the repossessed vehicle and the full amount owing under the contract, instead of the difference between the outstanding debt and the fair market value of the vehicle.

**Count IV
(Violations of Chapter 93A)**

58.     By engaging in the conduct complained of, Honda engaged in unfair and deceptive acts and practices, in violation of M.G.L. c. 93A. As a result thereof, Ms. Williams and class members have been damaged in an amount to be determined at trial.

59.     Honda's unfair and deceptive practices include, without limitation:

(a)  Collecting a debt in an unfair, deceptive or unreasonable manner in violation of M.G.L. c. 93, § 49;

(b)  Making a knowingly false or misleading representation as to the character, extent and/or amount of the debt, or as to its status in a legal proceeding in violation of 940 CMR 7.07(2);

(c)  Attempting to collect debts that are not legally owed in whole or in part, by *inter alia*, sending demand letters for inflated amounts;

(d)  Breaching its duty of good faith in violation of M.G.L. c. 106, § 1-202;

(e)  Engaging in unconscionable practices in the collection of a claim arising from a contract in violation of M.G.L. c. 106, § 2A-108(2); and

(f)  Failing to provide consumers with the rights and disclosures mandated by RISA and the UCC.

60.    Honda performed the actions described herein willfully and knowingly, or with reckless disregard of applicable law, all within the meaning of M.G.L. c. 93A, § 9(3).

## Count V
## (Declaratory Judgment)

61.    Pursuant to M.G.L. c. 231A, § 1, Ms. Williams and class members seek a declaration that Honda's conduct violates RISA, the UCC and c. 93A, as alleged in Counts I-IV; that class members are entitled to a recalculation of deficiency balances due under Retail Installment Sales Agreements based upon the difference between the fair market value of the repossessed vehicle and the full amount owing under the contract pursuant to c. 255B, § 20B(e)(1); and that class members are entitled to the remedies provided by RISA, the UCC and c. 93A.

**Prayer For Relief**

WHEREFORE, Ms. Williams respectfully prays for relief as follows:

*On Behalf of All Class Members*

A.      For an order certifying these claims as a class action;

B.      For a declaration that Honda's conduct violates RISA, the UCC and c. 93A, as alleged in Counts I-IV and that class members are entitled to a recalculation of deficiency balances due, if any, pursuant to c. 255B, § 20B(e)(1), to refunds of any payments made in excess of the deficiency allowable under RISA, with interest thereon, and to the remedies provided by RISA, the UCC and c. 93A;

C.      For an order preliminarily and permanently enjoining Honda from engaging in the practices challenged herein;

D.      For statutory damages for each class member pursuant to UCC § 9-625(c)(2) in the amount of the finance charge plus ten percent of the principal amount of the obligation applicable to that class member's contract;

E.      For statutory damages pursuant to c. 93A;

F.      For multiple damages pursuant to c. 93A;

G.      For attorneys' fees and costs;

H.      For pre-judgment interest to the extent permitted by law;

I.      For such other and further relief as the Court may deem just and proper.

*On behalf Of The Deficiency Demand Subclass*

J.      Statutory damages for each subclass member pursuant to UCC § 9-625(e)(5) in the amount of $500.

**Demand For Jury Trial**

Ms. Williams demands a trial by jury of all issues so triable.

Date:  December 18, 2014

Respectfully submitted,

*/s/ John Roddy*
John Roddy, BBO # 242420
Elizabeth Ryan, BBO # 549632
Bailey & Glasser LLP
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)

Steven R. Striffler, BBO # 664224
Law Office of Steven R. Striffler
21 McGrath Highway, Suite 301
Quincy, MA 02169
(617) 290-1573
(866) 314-2716 (fax)

*Attorneys for Plaintiff and Proposed Class*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on December 18, 2014.

*/s/ John Roddy*
John Roddy