# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **RACHEL C. WILLIAMS**, *on behalf of herself and others similarly situated,*<br><br>　　Plaintiff,<br><br>　　v.<br><br>**AMERICAN HONDA FINANCE CORP.**,<br><br>　　Defendant. | Civil Action No. 1:14-cv-12859-LTS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Lenders typically sell repossessed cars at auctions, which produce meager, fire-sale prices. Massachusetts law does not prohibit such sales, but it protects borrowers from their ill effects in one important way: a borrower must be given credit for the fair market value of the repossessed car when the lender calculates a deficiency. If the sale price is less than the fair market value, the borrower is not liable for that difference.

When Honda repossesses and sells cars in Massachusetts it ignores this statutory protection for consumer borrowers. Honda's post-repossession notices tell borrowers they will be liable for the difference between the sale price and the balance owed, misrepresenting their statutory rights and substantially overstating their liabilities. When the car is sold, Honda seeks to collect the

inflated, and illegal, deficiency balance. Honda's misrepresentation of consumers' statutory rights, coupled with its efforts to collect more than the law allows, violates the plain language of the Motor Vehicle Retail Installment Sales Act, M.G.L. c. 255B, *et seq.* (MVRISA), the UCC and Chapter 93A.

At issue here is MVRISA's section 20B(e)(1), which limits the deficiency a car loan creditor can seek. MVRISA completely bars a deficiency where the outstanding debt is less than $2,000. And if the debt exceeds $2,000:

> the creditor shall be entitled to recover from the debtor the deficiency, if any, resulting from deducting the fair market value of the collateral from the unpaid balance due and shall also be entitled to any reasonable repossession and storage costs, provided he has complied with all provisions of this section (emphasis added).

This case presents two discrete legal issues, both of which are ripe for determination on summary judgment.

> Honda is entitled to recover from Ms. Williams "the deficiency resulting from deducting the *fair market value* of the collateral from the unpaid balance due…."[1] The law requires Honda to accurately describe Ms. Williams's liability for a deficiency.[2] Does Honda violate Massachusetts law when it describes Ms. Williams's deficiency as the difference between the unpaid balance due and the price obtained at auction, and when it seeks from her a deficiency so calculated?
>
> The plain meaning of "fair market value" is "[t]he price at which a willing seller and a willing buyer will trade … [not] auction value …"[3] A repossession auction is a forced sale. Does Honda's sale of Ms. Williams's car at a repossession auction obtain "fair market value" for it?

---

[1] M.G.L. c. 255B, §20B(e)(1)(the recovery includes the right to reasonable costs of repossession and storage).
[2] M.G.L. c. 106, §9-611.
[3] Black's Law Dictionary, 4th Ed. 1968.

2

**ARGUMENT**

**II.  STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Calderon-Garnier v. Rodriguez*, 578 F.3d 33, 37 (1st Cir. 2009). A genuine issue of fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While all reasonable inferences must be drawn in favor of the nonmoving party, the court "must ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Am. Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 536 F.3d 68, 75 (1st Cir. 2008) (citation omitted).

**III.  THE PLAIN LANGUAGE OF MVRISA REQUIRES HONDA TO USE THE FAIR MARKET VALUE OF CONSUMERS' REPOSSESSED VEHICLES IN ITS DEFICIENCY CALCULATIONS, A REQUIREMENT IT REFUSES TO HONOR**

  **A.  SECTION 20B DISPLACES SALE PROCEEDS AS THE SUBTRAHEND IN THE DEFICIENCY CALCULATION AND REPLACES IT WITH THE VEHICLE'S FAIR MARKET VALUE**

The standard commercial deficiency formula derived from the UCC is the difference between the proceeds of the repossession sale and the amount owing on the loan. See UCC §§ 9-610, 9-614, 9-615, which contemplate use of this method. But repossession auction sales produce "notoriously" low prices, "certainly less than the retail and sometimes less than the wholesale price."

Alperin and Chase, 36 Mass. Prac., Consumer Law § 20:87 (3d ed.), citing F.T.C. Final Staff Report on Proposed Credit Practices Rule (1980), pp. 16, 264–269.

Recognizing that the established UCC commercial formula left consumers owing substantial deficiencies,[4] in 1974 the Legislature changed the calculus for retail installment vehicle loans, requiring lenders to use the fair market value of the car as the subtrahend[5] in the formula, instead of merely the auction sale proceeds. By expressly displacing the UCC formula, MVRISA "alters the adverse effect of this Code provision upon consumers…." *Id*.

**B.    "FAIR MARKET VALUE" IS NOT OBTAINED IN A FORCED SALE AT A REPOSSESSION AUCTION**

The term fair market value must be understood in its ordinary everyday sense, unless the context of the statute indicates otherwise. This ordinary meaning rule is "the most fundamental semantic rule of interpretation." A. Scalia, B. Garner, *Reading Law: The Interpretation of Legal Texts*, at 69-70 (2012). As noted, Black's defines "fair market value" as expressly excluding "auction value" or "panic sales[s]."[6] (emphasis added).

A repossession auction is a forced sale which produces "notoriously" low prices. Under MVRISA's dictates, the "typically low price the creditor receives by

---

[4] "The problem for consumers is that the Uniform Commercial Code permits the creditor to dispose of collateral in any 'commercially reasonable' manner and to charge against the debt the 'proceeds of disposition,' *not the actual retail value* of the collateral. *Id* (emphasis added).

[5] In subtraction, the first number is the minuend, the second is the subtrahend, and the answer is called the difference.

[6] Black's Law Dictionary, 4th Ed. 1968.

4

selling the collateral is not used to determine if a deficiency is due the creditor. Rather, the fair market value of the collateral is deducted from the outstanding balance, and any remaining balance is the deficiency due the creditor." Alperin and Chase, 36 Mass. Prac., Consumer Law § 20:87 (3d ed.).  Similar protections were enacted regulating repossession and sale in other secured consumer transactions, using the identical deficiency limiter provisions. See c. 255 § 13J(e)(1), 2; c. 255D § 22(e)(1), 2.

      Honda's position is that despite the revision of MVRISA to prohibit the use of the sale proceeds to determine a deficiency, nonetheless a lender may assume that the auction sale proceeds reflect the "fair market value" of the vehicle. Honda's 93A Response Letter, July 8, 2014, Exhibit D,[7] Interrogatory Response No. 4. This interpretation violates the plain meaning principle, makes the fair market value provision superfluous, and contradicts the dictionary definition of the term. To accept Honda's argument, the Court would have to assume that the Legislature felt it was necessary to rewrite multiple statutory provisions but to leave the effect of the law unchanged. But courts have recognized that MVRISA's governance of the vehicle repossession and sale process made "significant changes of great practical value to a defaulting debtor…." *Wilder v. Toyota Fin. Servs. Americas Corp.*, 764 F. Supp. 2d 249, 255-56 (D. Mass. 2011) (construing section 20A(e).)

---

[7] Exhibits refer to this attached to the Declaration of John Roddy, filed herewith.

And it would seem that Honda agrees with this interpretation of MVRISA, at least internally. ███████████████████████████

███████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

███████████████

Honda nevertheless argues in this litigation that when the Legislature rewrote the statute to require the vehicle's fair market value as the subtrahend in the deficiency calculation instead of the auction sale proceeds, that it meant to equate the two. But "[s]urely the Massachusetts legislature intended this additional subsection to add something more to the consumer protection statutes. …[y]et, under the defendants' reading of the statute, subsection (e) would be rendered superfluous." *Wilder*, 764 F. Supp. 2d at 256 (emphasis added). Statutory language should not be interpreted to be meaningless. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *United States v. Ramirez-Ferrer*, 82 F.3rd 1131 (1st Cir. 1996). A statute is to be construed as a whole so as to make it an effectual piece of legislation in harmony with common sense and reason. *Boston Police Patrolmen's Ass'n, Inc. v. Police Dept. of Boston*, 446 Mass. 46, 50 (2006); *Morrison v. Selectmen of Town of Weymouth*, 279 Mass. 486, 492 (1932).

---

8 ████████████████████████████████████████████████
████████████████████████

## IV.   MVRISA'S LEGISLATIVE HISTORY CONFIRMS THAT FAIR MARKET VALUE IS NOT DERIVED FROM A FORCED SALE AT A REPOSSESSION AUCTION

Prior to 1974, Massachusetts creditors were allowed to apply the *sale proceeds* in determining a deficiency, even in consumer retail installment sales transactions for cars. The previous version of Section 20A, St.1960 c. 173, as amended, provided in relevant part, that after a commercially reasonable sale:

> C. … The *proceeds of any disposition* shall be applied in the following order:
>
> > (1) … reasonable expenses of preparing the motor vehicle for disposition and … reasonable costs in disposing of the motor vehicle;
> >
> > (2) …. reasonable expenses of repossessing and holding the motor vehicle and reasonable attorney's fees …;
> >
> > (3) Satisfaction of the unpaid time balance ….

In an action to recover a deficiency, a creditor was required to file "an affidavit signed either by the purchaser at the sale or by the holder stating the *price for which the motor vehicle was sold* and the date and place of sale." Section 20B(D)(2) (1973 version)(emphasis added). The UCC was consistent.

The Legislature entirely rewrote sections 20A and 20B in 1974, among other things limiting deficiencies by requiring that the fair market value of the car be applied if more than $2,000 was owed. Section 20B(e)(1). The amendments added other protections, too. Under prior law, creditors could seek reasonable expenses for preparing a vehicle for disposition, for repossession, and for holding the vehicle, along with reasonable attorney's fees. Section 20B(A)(C) (1973 version). The amendments limited the costs and expenses that creditors

7

could include in the claimed deficiencies to "reasonable repossession and storage costs." *Id.*

The 1974 revision of sections 20A and 20B of MVRISA were intended to protect consumers from the distressed sale prices typically obtained at auctions for repossessed cars. *See* 36 Mass. Prac., Consumer Law § 20:87, *supra; see also* Shuchman, *Profit On Default: An Archival Study Of Automobile Repossession And Resale*, 22 Stan. L. Rev. 20, 31 (Nov. 1969) (auction sale prices averaged only 51% of the National Automotive Publisher's book).

Nothing in the statutory language suggests that creditors can, as Honda argues, use the auction sale price to calculate a deficiency, and claim that it represents fair market value. "[S]tudies indicated that deficiencies were determined based on sales of repossessed vehicles for less than wholesale market value and concluded that the U.C.C. deficiency mechanism allowed consumers to be victimized by the poor sales practices of repossessing creditors." Martin B. White, Consumer Repossessions and Deficiencies: New Perspectives from New Data, 23 B.C.L. Rev. 385, 409 (1982).

Honda's far-fetched construction of the applicable statutory language is especially meritless given the requirement that consumer protection statutes like MVRISA be liberally construed. *Barnes v. Fleet Nat. Bank, N.A.*, 370 F.3d 164, 171 (1st Cir. 2004); *Shepard v. Finance Associates of Auburn, Inc.*, 366 Mass. 182, 191 (1974) (consumer protection statutes are to be liberally construed to effectuate remedial purposes). The deficiency formula to use in Massachusetts is the

8

amount owed minus the fair market value. Honda simply insists on using the wrong formula.

## V. HONDA'S POST-REPOSSESSION AND POST-SALE NOTICES VIOLATE THE UCC

For all of the reasons stated above, Honda is required by Massachusetts law to apply the fair market value when it determines a deficiency and its failure to do so violates MVRISA. Its notices, which similarly use the sale price of the vehicle rather than its fair market value, violate the UCC's requirement that consumers' deficiency liabilities be accurately disclosed.

### A. THE UCC REQUIRES A REASONABLE DESCRIPTION OF THE LIABILITY FOR A DEFICIENCY

M.G.L. c. 106 § 9-611(b) requires a repossessing creditor to send the borrower "a reasonable authenticated notification of disposition." Comment 2 to this section explains that: "[t]he notification must be reasonable as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the disposition is to take place), and its content." To be reasonable, the content must accurately describe the consumer's deficiency obligation.

M.G.L. c. 106 § 9-614(1) contains the post-repossession notice requirements for the general class of consumer secured transactions. Specifically, it requires creditors to send a reasonable notice after a repossession that provides "a description of any liability for a deficiency of the person to which the notification is sent."

As Honda will likely argue, the section also contains a standard form of notice, containing several blank spaces, which "when completed provides sufficient notice." M.G.L. c. 106 § 9-614(3). This form is intended for use in a broad range of secured consumer transactions. It contains the following language regarding the description of the consumer's liability for a deficiency:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you *(will or will not, as applicable)* still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.
>
> M.G.L. c. 106 § 9-614(3) (emphasis in original).

The operative language in Honda's form – "the money we get from the sale [] will reduce the amount you owe" – misstates the law. While this statement tracks the UCC "sufficient" notice template, it is untrue because MVRISA mandates use of the fair market value formula. An example of an accurate description of the consumer's deficiency obligation by another lender is contained in the WFS Financial notice, which tracks MVRISA's deficiency limitation, and is therefore an accurate rendition of the law: "we may proceed against you for any deficiency balance that may exist on your debt after applying *the fair market value* of the vehicle toward our reasonable repossession and storage charges and your debt, unless your unpaid account balance was $2,000 or less at the time of your default." Exhibit J (emphasis added).

Honda's notice is simply a generic form it has drafted for use in other states, and reflects no effort to comply with Massachusetts' unique scheme. It

10

violates the plain language of the statute because it completely ignores that plain language.

### B. TO BE REASONABLE, THE DESCRIPTION OF THE CONSUMER'S DEFICIENCY OBLIGATION MUST ACCURATELY DESCRIBE THAT OBLIGATION

*Pre-Sale Notice*

The purpose of section 9-614's post-repossession notice requirement is to *accurately* inform consumers of their rights upon repossession, as the WFS Financial notice does. Honda's notice does not. By statute, *any error* in the mandatory information required by § 9-614(1) makes a notice legally insufficient. M.G.L. c. 106 § 9-614(5) (a notice that follows the provided form is legally sufficient only if it does not contain errors in the information required by § 9-614(1)); Official Comment 2 ("A notification that lacks *any* of the information set forth in paragraph (1) is insufficient as a matter of law." (emphasis added)). Honda's notice, which contains an undisputable error in the description of Ms. Williams's liability for a deficiency – that the subtrahend in the deficiency calculation is the sale proceeds and not the fair market value—is legally insufficient.

Official Comment 3 to UCC § 9-614 provides that a safe-harbor form notice is sufficient only if it is "properly completed." Although § 9-614(5) contains an exception for errors, the exception only applies to errors in additional *nonmandatory* information in the notification and then only if the errors are not misleading. M.G.L. c. 106 § 9-614(5). The exception does not apply to information

11

*required* by the statute. *See* Donald J. Rapson, *Default and Enforcement of Security Interests Under Revised Article 9*, 74 Chicago-Kent Law Review 893, 915 (1999); *see also* Marion W. Benfield, Jr., *Consumer Provisions In Revised Article 9*, 74 Chicago-Kent Law Review 1255, 1270 (1999)("The failure to include a minor-errors protection for the consumer-goods notice suggests that any error, no matter how slight, will make the notice inadequate and subject the creditor to substantial statutory damages recoverable for failure to comply with the Article 9 foreclosure rules even in the absence of actual harm").

In contrast, § 9-613(4), which governs notices sent to non-consumer debtors, provides that a repossession notice is sufficient even if it contains "minor errors that are not seriously misleading." *See* Official Comment 2 to 9-614 (noting that a 9-614 consumer notice that lacks any of the information required by paragraph (1) is insufficient as a matter of law, and comparing § 9-613(2), applicable in non-consumer transactions, "under which the trier of fact may find a notification to be sufficient even if it lacks some information listed in paragraph (1) of that section.") The lack of a similar broad errors exception for the consumer notice in § 9-614 makes clear that the requirements of § 9-614 are intended to apply strictly. *See* Rapson, *supra*, at 914 ("for consumer-goods transactions, the rules are significantly more stringent" than those for non-consumer-goods transactions).

*Post-Sale Notice*

Section 9-616 likewise requires that following a repossession, creditors send an explanation of the deficiency calculation before attempting to collect a deficiency. Here, unlike in § 9-614, the statute does not provide a form of notice that Honda can attempt to hide behind. Honda's deficiency explanation on this notice is similarly flawed in that it fails to accurately explain a borrower's deficiency liability under Massachusetts law.

### C. HONDA'S NOTICES ARE UNREASONABLE AND INACCURATE BECAUSE THEY MISSTATE A BORROWER'S DEFICIENCY LIABILITY, IGNORING THE LIMIT IMPOSED BY MVRISA

MVRISA displaces the UCC with respect to deficiencies in motor vehicle repossessions. Section 20B(d) provides: "*Unless displaced by the provisions of this section* and section twenty A the rights and obligations of the parties, including the redemption and disposition of the collateral shall be governed by the provisions of Part 6 of Article 9 of chapter 106. *Notwithstanding the provisions in Part 6 of Article 9 of chapter 106…,*" deficiencies are limited by the provisions of Section 20B. The statute is explicit, if there is a conflict MVRISA governs. This priority is in accord with the settled tenet of statutory construction that specific statutory language trumps the general. While sale proceeds may be used to calculate a deficiency in some consumer transactions.[10] The Legislature has created a specific exception in MVRISA for car repossessions. A provision that

---

[10] But only those transactions not governed by c. 255B, § 20B, c. 255D, § 22 or c. 255, § 13J.

13

allows the use of the sale proceeds (UCC) and one that requires the use of the fair market value (MVRISA) poses a conflict. Given this conflict, MVRISA governs the deficiency liability of Ms. Williams and other consumers. A notice that describes the deficiency liability under the *displaced* UCC provision is unreasonable, inaccurate and therefore defective.

A notice that misstates the consumer's legal rights is not "reasonable" if it undermines the purposes of the notice requirement. *See, e.g., Moore v. Fid. Fin. Servs., Inc.* 869 F. Supp. 557, 562 n. 14 (N.D. Ill. 1994) (*quoting Topeka Datsun Motor,* 736 P.2d at 88) ("misleading information that undermines the entire purpose of the notice 'becomes no notice at all'"); *Wilmington Trust Co. v. Conner,* 415 A.2d 773, 776 (Del.1980) ("Any aspect of the notice that is contrary to the purposes [for notice] necessarily prevents it from being 'reasonable notification.'").

In *Wilmington Trust,* an oft-cited case on the question of reasonableness, the notice overstated the amount necessary to redeem the collateral by incorrectly including $654.61 in rebates for unearned finance charges and insurance premiums. 415 A.2d at 776. It was immaterial, according to the Court, that the UCC did not require the notice to state an amount necessary to redeem. *Id.* The key issue, the Court said, was whether "reasonable notification" was given. *Id.* The Court explained that the "insertion of *an unduly inflated figure* in the notice discourages and perhaps frustrates the attempts of the debtor to find another buyer or to exercise his redemption rights." *Id.* (emphasis added) The

14

*Wilmington* court held that the notice violated the UCC as a matter of law, because it was not "reasonable" and was, therefore, defective. *Id.*

Generally, courts have found that a notice is "not reasonable" if it misstates the amount owed or requires payment of charges that are not authorized. *See, e.g., Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226, 1232-34 (N.D.Ill.1995)(notice requiring payment of unauthorized insurance premiums unreasonable); *First Nat'l Bank v. DiDomenico*, 487 A.2d 646 (Md. 1985)(while UCC does not require notice to include redemption rights, misstatement in notice which abrogates those rights renders notice insufficient).

This principle is illustrated in the context of consumer jurisprudence under Chapter 93A. In the seminal case of *Leardi v. Brown*, the SJC emphasized that in construing Chapter 93A, "regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might *reasonably be expected to have* upon the general public.'" *Leardi v. Brown*, 394 Mass. 151, 156 (citations omitted, emphases added). Honda's inaccurate "disclosure" of statutory rights only serves to misinform consumers of their deficiency liability, by leading them to believe that their liability is much greater than the law allows. This misconduct unjustly enriches Honda, as it collects inflated deficiencies in amounts much greater than consumers actually owe it, and deprives consumers of both their money and their rights. As such, Honda's conduct violates Chapter 93A as well as the UCC and MVRISA.

15

Honda's expected reliance on *Gaynor v. Union Trust Co.*, 216 Conn. 458, 480-81, 582 A.2d 190, 201 (1990), a case decided under the UCC in effect prior to the 2001 revisions, is misplaced. Connecticut's Retail Installment Sales Act, which has a different statutory scheme than Massachusetts' MVRISA, contains a provision that requires a notice of the distribution of the proceeds after a sale has taken place. Conn. Gen. Stat. § 42-98(e). The statute provides that in the case of a motor vehicle, *prima facie* evidence of the fair market value shall be the average of the NADA trade-in and retail values, which can be rebutted only by direct in-court testimony. § 42-98(g). The deficiency is determined by applying the greater of the fair market value and the sale proceeds to the outstanding debt.

Unlike Honda, Union Trust Co. did not simply ignore the statutory requirements. It sent a notice stating that the proceeds were calculated in accordance with § 42-98(e). The notice then advised the borrower: "If there was a deficiency, as defined in section 42-98(g) of the Connecticut General Statutes, you will be held liable for paying such deficiency in an amount equal to that which is provided for in said statutes." *Gaynor*, supra at 480. The Court found that notice was sufficient because it contained the lender's good faith assessment of the deficiency remaining based on the requirements of the statute. *Id.*

Notably, *Gaynor* did not address the applicability of the UCC notice requirements under the current (or even the former) enactments. Nor did it affirm the lender's right to collect a deficiency based on the sale price, and in fact reduced the claimed deficiency to take into account the fair market value. *Id.*

16

### D.  HONDA'S NOTICES VIOLATE CHAPTER 93A

Honda misrepresented the formula to be used under Massachusetts law to calculate a deficiency. Such conduct falls squarely into the category of unfair and deceptive practices prohibited by c. 93A. Ms. Williams's c. 93A claim also alleges that Honda violated M.G.L. c. 93, § 49 and 940 CMR 7.07(2). Honda's notices unfairly and deceptively informed Ms. Williams that she would be liable for the difference between the auction sale price and the amount outstanding on her loan. That representation, that it is entitled to an inflated deficiency amount, is what MVRISA expressly precludes.

Honda's notices also constitute unfair debt collection pursuant to M.G.L. c. 93, § 49, which states that:

> No one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.

Failure to comply with § 49 violates c. 93A. *Id.* Similarly, the debt collection regulations promulgated by the Attorney General at 940 CMR 7.00, *et seq.* prohibit such misrepresentations:

> It shall constitute a deceptive act or practice to engage in any of the following practices: . . . (2) Any knowingly false or misleading representation in any communication as to the character, extent or amount of the debt, or as to its status in any legal proceeding . . .

940 CMR 7.07(2).

Nowhere does the UCC or any Massachusetts law affirmatively permit a creditor to misrepresent the formula for calculating a deficiency amount and to

17

repeatedly seek that amount as Honda has done here. Thus, this case is readily distinguishable from *Riccio v. Honda Motor Credit Co.*, 238 F.R.D. 44 (D. Mass. 2006) (Young, J.).

In addition, it is an elementary principle under Chapter 93A that it is a deceptive practice to misinform consumers of their statutory rights, or to fail to disclose facts which have the "tendency, capacity or effect" of deceiving consumers. *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703, 322 NE 2d 768, 778 (1975); *Commonwealth v. Amcan Enterprises, Inc.*, 47 Mass. App. Ct. 330, 335 (Mass. App. Ct. 1999) (deception standard for c. 93A is "tendency to deceive...to be construed in the context of the reasonable consumer"). *See also* 940 CMR 3.05(1), 3.16(2), (3)[11]. Finally, a violation of MVRISA is a *per se* violation of Chapter 93A, G.L. c. 255B, § 6.

## VI. CONCLUSION

For the foregoing reasons, Ms. Williams is entitled to summary judgment.

Dated: April 30, 2015

---

[11] 940 CMR 3.16 provides that an act or practice is a violation of c.93A § 2 if:
. . .
(2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or

(3) It fails to comply with existing statutes [such as MVRISA § 20B(e)(1)], rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.

Respectfully submitted,

*/s/ John Roddy*
John Roddy, BBO # 424240
Elizabeth Ryan, BBO # 549632
Bailey & Glasser LLP
99 High Street, Suite 304
Boston, MA 02111
(617) 439-6730 x1602

Steven R. Striffler, BBO # 664224
Law Office of Steven R. Striffler
21 McGrath Highway, Suite 301
Quincy, MA 02169
(617) 290-1573
(866) 314-2716 (fax)

**Certificate of Service**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on April 30, 2015.

                                            */s/ John Roddy*
                                            John Roddy