UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

RACHEL WILLIAMS, on behalf of herself            )
and others similarly situated,                   )
                                                 )
                        Plaintiff,               )
                                                 )
v.                                               )        Civil Action No. 14-12859-LTS
                                                 )
AMERICAN HONDA FINANCE CORP.,                    )
                                                 )
                        Defendant.               )
———————————————————————

REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT
[Docket Nos. 41, 52]

January 27, 2016

Boal, M.J.

In this putative class action, plaintiff Rachel Williams alleges violations of state law –

specifically, the Uniform Commercial Code, the Motor Vehicle Retail Installment Sales Act, and

Chapter 93A of the Massachusetts General Laws – arising from the repossession of her car by

defendant American Honda Finance Corp. ("Honda").  She asserts these claims on behalf of

herself and all other Massachusetts residents who have financed their cars through Honda and

then had their cars repossessed.  Both parties have filed motions for summary judgment.  Docket

Nos. 41, 52.[1]  For the following reasons, this Court recommends that the District Judge assigned

to this case deny Williams' motion, grant Honda's motion, and grant summary judgment in favor

of Honda.

_____

[1] On September 22, 2015, the District Court referred this case to the undersigned for full
pretrial management and report and recommendations on dispositive motions.  Docket No. 66.

I.      PROCEDURAL BACKGROUND

Williams filed this putative class action in Norfolk Superior Court on April 7, 2014.

Docket No. 10 at 2, 4-27.   Honda removed the action to this Court on July 3, 2014.  Docket No.

1.  On July 30, 2014, Williams filed a motion to remand the action to state court.  Docket No. 6.

The District Court denied the motion to remand on October 30, 2014.  Docket No. 18.

Williams filed a motion for summary judgment on April 30, 2015.  Docket No. 41.  On

June 16, 2015, Honda opposed Williams' motion and filed a cross-motion for summary

judgment.  Docket No. 52.  Williams filed a reply on July 15, 2015.  Docket No. 55.  On August

12, 2015, Honda filed a surreply.  Docket No. 61.  The Court heard oral argument on January 13,

2016.

II.     FACTUAL BACKGROUND

A.      Scope Of The Record

In order to determine precisely which materials are properly before the Court for

purposes of deciding the parties' motions for summary judgment, this Court must first decide

Honda's objections to certain of Williams' exhibits.  First, Honda objects to Williams' Exhibit F,

a printout of the National Automobile Dealers Association ("NADA") values for a vehicle of

similar make, model year, mileage, geography, and condition as Williams' car.  See Docket No.

44-6.  While it appears that NADA values are widely used in the auto industry and the courts as

evidence of a vehicle's value, see, e.g., In re Roberts, 210 B.R. 325, 330 (Bankr. N.D. Iowa

1997), this exhibit has not been properly authenticated.[2]

---

[2] Although hearsay, courts have found that the NADA Guide fits within the Rule 803(17)
hearsay exception for reports or compilations generally relied upon by the public or by persons
in particular occupations.  See, e.g., Roberts, 210 B.R. at 330.

To enable their consideration in a summary judgment motion, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56[]." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (quotations omitted).  Rule 56(c)(4)  provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Here, Williams has submitted the affidavits of her attorney and a paralegal in an effort to authenticate Exhibit F. See Docket No. 44-6, Docket No. 69-1.[3]  However, neither the attorney nor the paralegal are competent to testify as to the exhibit because they have no personal knowledge of the information contained therein.  All they can attest to is that they received the document from an unidentified NADA customer service representative.  See Docket No. 44-6 at ¶¶ 5-9; Docket No. 69-1 at ¶¶ 2-3.  Accordingly, the Court will not consider Exhibit F.

Similarly, Exhibit E, a redacted credit report for Williams' Honda Account (Docket No. 44-5) has not been properly authenticated.  Again, Williams submits an affidavit from her attorney, attesting that he obtained the report online from CIN Legal Data Services.  See Docket No. 69-2 at ¶ 3.  In addition, the credit report is inadmissible hearsay.  Williams' attorney is not competent to provide the foundation that would support allowing this document into evidence under any of the exceptions to the hearsay rule.  See, e.g., Gannon v. IC Sys., Inc., No. 09-60302-CIV, 2009 WL 3199190, at *1 (S.D. Fla. Sept. 25, 2009); Cruz v. MRC Receivables

---

[3] Honda objected to Williams' exhibits in its response to Williams' statement of material facts. See Docket No. 57.  Williams did not respond to Honda's objections in her reply.  Nevertheless, this Court provided her with an opportunity to respond and/or cure any deficiencies in her submission.  Docket No. 68.  In response, Williams submitted both legal argument and an affidavit of Benjamin Lajoie, an attorney at Bailey & Glasser, LLP.  Docket No. 69.  Her response, however, did not cure the deficiencies in her original submission.

Corp., 563 F. Supp. 2d 1092, 1095 (N.D. Ca. 2008).  Accordingly, the Court will not consider

Exhibit E.[4]

Finally, Honda objects to Exhibit J, a copy of WSF's Financial Repossession Notice.

Williams has not authenticated this document, has not responded to Honda's objection, and, in

any event, has not shown that this document is material for summary judgment purposes.

Accordingly, the Court will not consider Exhibit J.

B.      Facts[5]

On August 29, 2007, Williams entered into a motor vehicle retail installment sale

contract (the "Contract") for the purchase of a 2007 Honda Accord (the "Vehicle") for $38,259,

financing $26,407 of this amount.  SOF ¶ 2.  The Contract provides that it is governed by the

laws of Massachusetts.  SOF ¶ 3.  The Contract states that "[i]f Seller repossesses the Vehicle,

Seller can, . . . sell it and apply the money received to what Buyer owes.  Proceeds of sale . . .

will be applied to the unpaid sums owing under this Contract."  SOF ¶ 5.  The Contract further

states that "Buyer will be liable for any deficiency incurred" and "Seller has the right to a

deficiency judgment . . . in accordance with applicable law."  Id.

---

[4] Williams argues that the Court can take judicial notice of her credit report.  Docket No. 69 at 3.
However, the case cited by Williams does not support her argument.  See Giovanni v. Bank of
Am., N.A., No. C 12-02530 LB, 2013 WL 1663335, at *2 (N.D. Cal. Apr. 17, 2013).  That case
involved the consideration of exhibits in connection with a motion to dismiss.  The Court
considered the credit report because the complaint referred to the credit report, the document was
central to the plaintiff's claim, and the defendant did not question the authenticity of the
document.  Id.  In any event, this document does not appear to be material for summary
judgment purposes.

[5] The facts are largely undisputed.  Because this case is before the Court on cross-motions for
summary judgment, the Court sets out any disputed facts in the light most favorable to the non-
moving party.  See Ahern v. Shinseki, 629 F.3d 49, 53-54 (1st Cir. 2010) (citing Cox v. Hainey,
391 F.3d 25, 29 (1st Cir. 2004)).  The facts are taken from the parties' Combined Statement of
Material Undisputed Facts ("SOF").  Docket No. 63.  References to Exhibits are to the Exhibit
Table of Contents to the Combined Statement of Material Undisputed Facts.  Docket No. 58.

On September 20, 2011, Honda caused the Vehicle to be repossessed.  SOF ¶ 6.  On September 21, 2011, Honda sent Williams a notice (the "Pre-Sale Notice") advising her of the repossession and of its intent to dispose of the Vehicle.  SOF ¶ 7.  In relevant part, the Pre-Sale Notice states:

> We have the motor vehicle described above because you broke promises in our agreement, and we will sell it a private sale sometime after October 11, 2011.
>
> The money received from the sale (after paying our costs) will reduce the amount you owe.  If the auction proceeds are less than what you owe, you will still owe us the difference.  If we receive more money than you owe, you will receive a refund, unless we must pay it to someone else.  If you would like a written explanation on how the amount you owe was determined, or need additional information about the sale, please send your request to the address below.
>
> You can get the property back at any time before we sell it by paying the full payoff amount, including our expenses.  As of today, the payoff amount is $13,366.78, which is subject to change due to the addition of applicable fees and/or finance charges.

Williams Ex. B.

On October 27, 2011, Honda sold the Vehicle at a private sale for $8,900.  SOF ¶ 10; Williams Ex. C.  On November 1, 2011, Honda sent a letter to Williams informing her of the sale and stating that after applying the sale price to the money owed by Williams, there was deficiency of $4,173.32 (the "Deficiency Notice").  SOF ¶¶ 11, 12; Williams Ex. C.  Honda calculated Williams' deficiency by subtracting the auction sale price of $8,900 from the outstanding loan balance at the time of the sale, and adding its costs of repossession and storage.  SOF ¶ 13.

When Honda repossessed Williams' Vehicle, it was in rough, below-average condition for a car its age.  SOF ¶ 27.  In October 2011, the Black Book wholesale value for a car of similar make, model year, mileage, geography, and condition as Williams' car was $7,750.  SOF

¶ 28.  The Black Book estimated retail value of such a car was $9,800.  SOF ¶ 19.  The Black

Book is generally recognized in the motor vehicle collections, customer, service, and credit

industry to assist in setting a basepoint to start establishing values for vehicles.  SOF ¶ 18.[6]

Honda set a floor price of $8,700 before selling the Vehicle at auction.  SOF ¶ 29.  Honda

disposes of lease-end and repossessed cars in the same manner, in a process designed to obtain

the highest possible price.  SOF ¶ 30.

III.   ANALYSIS

A.   Standard Of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the non-moving party."  Sanchez v. Alvarado, 101 F.3d 223, 227

(1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential

to affect the outcome of the suit under the applicable law."  Id.  (quotations and citations

omitted).

The Court "must scrutinize the evidence in the light most agreeable to the nonmovants,

who are entitled to the benefit of all reasonable inferences therefrom."  Ahern v. Shinseki, 629

F.3d 49, 53-54 (1st Cir. 2010) (citing Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004)).  "A

properly supported summary judgment motion cannot be defeated by relying upon conclusory

allegations, improbable inferences, acrimonious invective, or rank speculation."  Id. (citations

omitted).

---

[6] Williams states that the Black Book is generally recognized in the motor vehicle collections, customer service, and credit industry to establish vehicle values while Honda states that it simply assists in setting a basepoint to start establishing the value of a vehicle.  SOF ¶ 18.

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*." Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996) (internal citations omitted).  "Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Id.  "Where, as here, a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism." Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010) (citing Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996) ("Barring special circumstances, the nisi prius court must consider each motion separately, drawing inferences against each movant in turn.")).

B.   Motor Vehicle Retail Installment Sales Act

Williams argues that Honda violated the Motor Vehicle Retail Installment Sales Act ("MVRISA") because it did not apply the Vehicle's fair market value in calculating the deficiency Williams owed after repossession and sale of the Vehicle.[7]  Docket No. 46 at 3-9. Honda argues that the MVRISA does not displace the UCC's well-established "commercial reasonableness" standard for sales of repossessed goods.  Docket No. 53 at 7-11.  Honda also argues that the sale of the Vehicle was commercially reasonable and, therefore, yielded fair market value.  Docket No. 53 at 11-14.  Neither party is precisely correct.

The provisions of the MVRISA, M.G.L. c. 255B, "are designed to protect the rights of retail buyers who default under a retail instalment sales contract when a motor vehicle, subject to

---

[7] Although Count III of the Amended Complaint brings a claim for a violation of MVRISA, counsel for Williams acknowledged at oral argument that MVRISA does not provide for an independent cause of action.  For this reason alone, Honda is entitled to summary judgment in its favor on Count III.  However, MVRISA may be enforced through Chapter 93A.  M.G.L. c. 255B, § 6 ("A violation of this chapter shall also be a violation of chapter ninety-three A.").  In addition, whether Honda violated MVRISA is relevant to whether it also violated the UCC's notice requirements.

a security interest, is repossessed." Carvalho v. Shaker, 362 Mass. 870, 870 (1972). As relevant

here, the MVRISA provides:

> (d)  The creditor may after gaining possession sell or otherwise dispose of
> the collateral. *Unless displaced by the provisions of this section and section
> twenty A the rights and obligations of the parties, including the redemption
> and disposition of the collateral shall be governed by the provisions of Part
> 6 of Article 9 of chapter 106.*  Notwithstanding the provisions in Part 6 of
> Article 9 of chapter 106, if, in connection with a consumer credit transaction
> which involves an unpaid balance of two thousand dollars or less and which
> is at the time of default secured by a non-possessory security interest in
> consumer goods, the creditor takes possession of or accepts surrender of the
> collateral, the debtor shall not be liable for any deficiency.  . . . For the
> purposes of this section the unpaid balance of a consumer credit transaction
> shall be the amount which the debtor would have been required to pay upon
> prepayment.

> (e)(1) If the unpaid balance of the consumer credit transaction at the time of
> default was two thousand dollars or more the creditor shall be entitled to
> recover from the debtor the deficiency, if any, resulting from deducting the
> fair market value of the collateral from the unpaid balance due and shall
> also be entitled to any reasonable repossession and storage costs, provided
> he has complied with all provisions of this section.

> (2) In a proceeding for a deficiency the fair market value of the collateral
> shall be a question for the court to determine.  Periodically published trade
> estimates of the retail value of goods shall, to the extent they are recognized
> in the particular trade or business, be presumed to be the fair market value
> of the collateral.

M.G.L. c. 255B, § 20B(d), (e) ("Section 20B") (emphasis added).  Therefore, Article 9 of the

Massachusetts Uniform Commercial Code governs the repossession process unless displaced by

the more protective provisions of Section 20B.

The UCC provides that "[a]fter default, a secured party may sell, lease, license, or

otherwise dispose of any or all of the collateral in its present condition or following any

commercially reasonable preparation or processing."  M.G.L. c. 106, § 9-610(a).  "Every aspect

of a disposition of collateral, including the method, manner, time, place, and other terms, must be

commercially reasonable."  Id. at § 9-610(b).  A sale is commercially reasonable if made "(1) in

the usual manner on any recognized market; (2) at the price current in any recognized market at the time of the disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." Id. at § 9-627(b). "The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner." Id. at § 9-627(a).

Williams argues that Section 20B displaces the provisions of the UCC in calculating a deficiency after repossession and sale. Docket No. 46 at 3-4. Section 20B mandates that fair market value, not sale proceeds, be used in the deficiency calculation. Id. Honda, on the other hand, argues that Section 20B does not displace the UCC's commercial reasonableness standard. Docket No. 53 at 7-11. Thus, Honda need only sell a repossessed car in a commercially reasonable manner. Id. In any event, Honda argues, Honda's sale of Williams' Vehicle was lawful because Honda obtained fair market value for it. Id. at 11-14. The Court generally agrees with Williams' interpretation of the MVRISA. However, Williams has failed to provide sufficient evidence to show that Honda violated the statute with respect to the sale of her Vehicle.

There are only a few cases dealing with Section 20B. In addition, the Court's research has not found, and the parties have not cited, any cases on point. However, commentators have generally agreed that Section 20B was intended to protect consumers from distressed sale prices typically obtained at auctions for repossessed cars. For example, one such commentator has stated:

> [W]hen secured creditors sell repossessed collateral, such as automobiles and other high-priced consumer goods, they notoriously receive a low price, certainly less than the retail and sometimes less than the wholesale price. The problem for consumers is that the Uniform Commercial Code permits the creditor to dispose of collateral in any "commercially reasonable" manner and to charge against the debt the "proceeds of disposition," not the actual retail value of the collateral. Massachusetts consumer credit statutes alter the adverse effect of this Code provision upon consumers by providing that the creditor may recover any deficiency "resulting from deducting the *fair market value* of the collateral from the unpaid balance due." Thus, in consumer credit transactions in Massachusetts, the typically low price the creditor receives by selling the collateral is not used to determine if a deficiency is due the creditor. Rather, the fair market value of the collateral is deducted from the outstanding balance, and any remaining balance is the deficiency due the creditor.

Merritt, T., 36 MASS. PRAC., CONSUMER LAW § 20:87 (3d ed.) (emphasis in original).

Similarly, Judge James F. Queenan summarized the effect of Section 20B as follows:

> The rules governing computation of the deficiency have also been changed. Under the Uniform Commercial Code a secured party may claim a deficiency based upon the proceeds of the resale less expenses so long as the resale is "commercially reasonable." Now as to consumer goods the amount of the deficiency is computed solely with reference to the "fair market value of the collateral" less "reasonable repossession and storage costs." The determination of fair market value is left expressly for the courts, aided by a presumption phrased as follows: "Periodically published trade estimates of the retail value of goods shall, to the extent they are recognized in the particular trade or business, be presumed to be the fair market value of the collateral." No longer will a secured party be entitled to rely on the wholesale price in computing his deficiency. This change should have its greatest impact upon a lender who is not in the business of selling the goods at retail and who finances the purchase price with recourse to the seller.

Queenan, J., *The New Consumer Repossession Law*, 58 MASS. L. QUARTERLY 412, 417 (1973).

Therefore, the Court finds that MVRISA changed the rules governing deficiency calculations in motor vehicle retail installments sales. Section 20B plainly requires that the fair market value be used to calculate the amount of a deficiency. The fact that the sale was "commercially reasonable" does not necessarily mean that the sale proceeds equal fair market value. If that was

so, there would have been no need to enact Section 20B(e)(1).  While the Court generally agrees with Williams' interpretation of the statute, however, she has failed to present sufficient evidence to show that Honda failed to obtain fair market value for the Vehicle and overstated the amount of the deficiency.

"Fair market value" is "the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market." Clapp v. Haynes, 11 Mass. App. Ct. 895, 897 (1980) (quoting Epstein v. Boston Housing Auth., 317 Mass. 297, 299 (1944)).  "A non-compulsory sale between a willing seller and buyer is ordinarily regarded as a good test or criterion to aid the jury in determining the value of the land in controversy." Epstein, 317 Mass. at 299.  In the case of repossessed vehicles, Section 20B creates a presumption regarding the determination of fair market value: "Periodically published trade estimates of the retail value of goods shall, to the extent they are recognized in the particular trade or business, be presumed to be the fair market value of the collateral." M.G.L. c. 255, § 20B(e)(2).

Honda argues that the presumption that retail value equals fair market value does not apply here because this case is not a proceeding for a deficiency.  Docket No. 61 at 5.  Honda contends that interpreting "fair market value" to mean the same thing in Section 20B(e)(1) and Section 20B(e)(2) would make Section 20B(e)(2)'s language "superfluous."  Docket No. 53 at 13-14.  However, the statute uses identical language in both sections and, therefore, there is no reason to interpret the term differently depending on the subsection.  See, e.g., Passatempo v. McMenimen, 461 Mass. 279, 299 (2012) ("words are given a consistent meaning throughout a statute"); Hallett v. Contributory Retirement Appeal Bd., 431 Mass. 66, 69 (2000) (citation omitted) ("Where words in a statute are used in one part of a statute in a definite sense, they

should be given the same meaning in another part of the statute."). Therefore, the Court finds that the presumption in Section 20B applies in this case.

Nevertheless, there is no evidence in the summary judgment record to support the fair market value of Williams' car at the time of sale. The only exhibit Williams cites to support her contention has not been authenticated and the Court has therefore not considered it. Further, even if the Court were to consider the exhibit, it does not support Williams' claim that her Vehicle had a retail value of $14,450 at the time of the sale. The NADA Guide only states that the "clean retail" value of a similar vehicle would be $14,450. However, Honda has submitted evidence, which Williams has not disputed, that her Vehicle was in rough, below-average condition for a car its age. SOF ¶ 27. The NADA Guide states that a similar vehicle would have a "rough trade in" value of $9,500, which is not substantially different from the price Honda obtained for the Vehicle. Under the circumstances, therefore, Williams would likely need expert testimony in order to establish the fair market value of the Vehicle. See, e.g., In re Roberts, 210 B.R. at 330-331 (NADA guidelines constitute some evidence of value but are not conclusive; NADA Guide should be used in conjunction with expert testimony); see also In re Wcislak, 417 B.R. 24, 29 (Bankr. N.D. Ohio. 2009) (same with respect to Blue Book). Williams has presented no such evidence to the Court. Accordingly, Williams has failed to provide sufficient evidence to show that Honda violated Section 20B.

C.     The Notice Requirement

A secured party planning to dispose of collateral must send a pre-disposition notice to the consumer. M.G.L. c. 106, § 9-611(b). Among other things, the notice must include "a description of any liability for a deficiency of the person to which the notification is sent." Id. at § 9-614(1)(B). "A particular phrasing of the notification is not required." Id. at § 9-614(2).

12

Nevertheless, "the following form of notification, when completed, provides sufficient

information:"

> (*Name and address of secured party*)

> (*Date*)

> NOTICE OF OUR PLAN TO SELL PROPERTY

> (*Name and address of any obligor who is also a debtor*)

> Subject: (*Identification of Transaction*)

> We have your (*describe collateral*), because you broke promises in our agreement.
>
> * * *
>
> (*For a private disposition*:)

> We will sell (*describe collateral*) at private sale sometime after (*date*).  A sale could include a lease or license.

> The money that we get from the sale (*after paying our costs*) will reduce the amount you owe.  If we get less money than you owe you (*will or will not, as applicable*) still owe us the difference.  If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

> You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses.  To learn the exact amount you must pay, call us at (*telephone number*).

> If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at (*telephone number*) or write us at (*secured party's address*) and request a written explanation.  (We will charge you $___ for the explanation if we sent you another written explanation of the amount you owe us within the last 6 months.)

> If you need more information about the sale call as at (*telephone number*) (*or write us at (secured party's address)*).

> We are sending this notice to the following other people who have an interest in (*describe collateral*) or who owe money under your agreement:

> (*Names of all other debtors and obligors, if any*)

(**End of Form**)

M.G.L. c. 106, § 9-614(3).  A notification following the above form "is sufficient, even if additional information appears at the end of the form."  Id. at § 9-614(4).  Such a notification is sufficient "even if it includes errors in information not required by paragraph (1), unless the error is misleading with respect to rights arising under this article."  Id. at § 9-614(5).

Similarly, after disposition, the secured party must send a notice accounting for any deficiency.  Id. at § 9-616(b).  Among other things, the notice must include "the amount of the proceeds of the disposition" and "the amount of the surplus or deficiency."  Id. at § 9-616(c).  "A particular phrasing of the explanation is not required."  Id. at § 9-616(d).  "An explanation complying substantially with [all requirements] is sufficient, even if it includes minor errors that are not seriously misleading."  Id.

Honda's Pre- and Post-Sale Notices comply with the statute.  Williams contends that the Pre-Sale Notice was misleading because it did not state that under Section 20B, Honda was required to calculate any deficiency using the fair market value of the Vehicle (as opposed to the sale proceeds).  Docket No. 46 at 13-14.  However, the Pre-Sale Notice, sent on September 21, 2011, tracks the safe harbor language in Section 9-614(3).  In addition, the Pre-Sale Notice states that "[i]f the auction proceeds are less than what you owe, you will still owe us the difference."  Williams Ex. B.  The Post-Sale Notice calculates the deficiency based on the sale proceeds.  Williams Ex. C.  There is no evidence that the auction proceeds were less than the fair market value of the Vehicle.[8]  Without such evidence, Williams cannot show that the notices were

---

[8] Similarly, any failure to reference Section 20B's provision that a creditor may not recover a deficiency if the unpaid balance is $2,000 or less is not misleading because that provision does not apply to Williams, the only named plaintiff at this time.

misleading under the circumstances.  Accordingly, the Court finds that Honda is entitled to summary judgment in its favor on Williams' UCC claims.

D.    Chapter 93A

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  M.G.L. 93A, § 2(a).  Pursuant to Chapter 93A, a business practice is unfair and deceptive if it can be found to be "immoral, unethical, oppressive, or unscrupulous; or within the bounds of some statutory, common-law or other established concept of unfairness."  Harrington v. CAVC of Colorado, LLC, 508 F. Supp. 2d 128, 137 (D. Mass. 2007) (quoting Ellis v. Safety Ins. Co., 41 Mass. App. Ct. 630, 640 (1996)).

A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury. Casavant v. Norwegian Cruise Line, Ltd., 76 Mass. App. Ct. 73, 76 (2009), aff'd, 460 Mass. 500 (2011) (citing G.L. c. 93A, § 9); Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc., 445 Mass. 790, 797 (2006).  "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'"  Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted).  "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law."  Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

Williams contends that Honda violated Chapter 93A by:

(a) Collecting a debt in an unfair, deceptive or unreasonable manner in violation of M.G.L. c. 93, § 49;

      (b)  Making a knowingly false or misleading representation as to the character, extent and/or amount of the debt, or as to its status in a legal proceeding in violation of 940 CMR 7.07(2);

      (c)  Attempting to collect debts that are not legally owed in whole or in part, by *inter alia*, sending demand letters for inflated amounts;

      (d)  Breaching its duty of good faith in violation of M.G.L. c. 106, § 1-202;

      (e)  Engaging in unconscionable practices in the collection of a claim arising from a contract in violation of M.G.L. c. 106, § 2A-108(2);

      (f)  Failing to provide consumers with the rights and disclosures mandated by RISA and the UCC.

Amended Complaint ¶ 59.

Because the Court has found that Williams did not provide any evidence that Honda violated the MVRISA or the UCC or that Honda's notices were misleading under the circumstances, Williams cannot show that Honda committed unfair or deceptive practices as described in paragraphs (b), (c), or (f) above.

Chapter 93, Section 49, of the Massachusetts General Laws prohibits unfair, deceptive or unreasonable consumer debt collection practices. The statute specifically provides that the following are deemed to be unfair, deceptive, or unreasonable consumer debt collection practices: (1) where the creditor communicates, threatens to communicate, or implies the fact of such debt to a person other than the person who might reasonably be expected to be liable for the debt except with the written permission of the debtor; (2) where the creditor communicates directly with the alleged debtor after notification from an attorney representing such debtor that all further communications concerning the debt should be addressed to the attorney; (3) where the creditor communicates with the debtor in such a manner as to harass or embarrass the debtor, such as by unreasonable hours or frequency of communication, threats of violence, use of offensive language, or by false threats of action; or (4) where the creditor communicates with the debtor through the use of forms or instruments that simulate judicial process. M.G.L. c. 93, § 49.

Williams has presented no evidence that Honda engaged in any of the practices prohibited by Section 49.

Williams also alleges in the Amended Complaint, without elaboration in her summary judgment briefing, that Honda breached its "duty of good faith" in violation of M.G.L. c. 106, § 1-202.  Amended Complaint ¶ 59(d).  However, this statute simply establishes when a person receives notice of a fact under the UCC.  Williams may have meant to cite to M.G.L. c. 106, § 1-304, which provides that "[e]very contract or duty within this chapter imposes an obligation of good faith in its performance and enforcement."  Nevertheless, because Williams' claims are based on allegations that Honda's notices are misleading and the Court has found that she has not presented any evidence to support that claim, Section 1-304 cannot provide the basis for a Chapter 93A claim.

Finally, Williams alleges that Honda engaged in unconscionable practices in the collection of its claim in violation of M.G.L. c. 106, § 2A-108(2).  Section 2A-108(2) provides that "with respect to a consumer lease, if the court as a matter of law finds that a lease contract or any clause of a lease contract has been induced by unconscionable conduct or that unconscionable conduct has occurred in the collection of a claim arising from a lease contract, the court may grant appropriate relief."  Id.  The statute does not define what constitutes unconscionable conduct and the Court has not found any cases that interpret the term as it relates to the collection of a claim.  In determining whether a contract or a contract provision is unconscionable, one court has explained:

> Because there is no clear, all-purpose definition of 'unconscionable' nor could there be, unconscionability must be determined on a case by case basis, giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party.

> Under Massachusetts law, the doctrine of unconscionability recognizes procedural and substantive unconscionability. Procedural unconscionability evaluates the circumstances under which the contract was executed to determine if it is the product of unfair surprise. Substantive unconscionability evaluates the actual terms of the contract to determine if they are substantively unfair. If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement.
>
> The fact that this conduct constitutes an unfair or deceptive practice, however, does not mean that this conduct was unconscionable.

In re Sullivan, 346 B.R. 4, 25 (Bankr. D. Mass. 2006) (internal quotations and citations omitted). Therefore, it appears that "unconscionable" is a hard standard to meet, requiring something worse than unfair or deceptive conduct. Here, the Court has found that Williams has presented no evidence that Honda's actions were misleading or deceptive under the circumstances. Hence, there is no evidence that Honda's actions were unconscionable.

Accordingly, the Court finds that Williams has failed to present evidence showing that Honda engaged in unfair or deceptive practices in violation of Chapter 93A and recommends that the District Court grant summary judgment in Honda's favor.[9]

IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends that the District Judge assigned to this case deny Williams' motion for summary judgment and grant Honda's motion for summary judgment.

---

[9] In addition, in order to establish a violation of Chapter 93A, a plaintiff must demonstrate that even a per se violation caused an injury to her. See Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 251 (1st Cir. 2010). Neither party has raised the issue, but Williams appears to have suffered no injury because Honda did not attempt to collect a deficiency from her.

V.      REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).


/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge