**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **RACHEL C. WILLIAMS**, on behalf of herself and others similarly situated, <br> Plaintiff, <br><br> v. <br><br> **AMERICAN HONDA FINANCE CORP**., <br><br> Defendant. | Civil Action No. 1:14-cv-12859-LTS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page(s)**

I.      Introduction ............................................................................................................. 1

II.     Statement Of The Case ........................................................................................... 2

III.    The Terms Of The Settlement................................................................................. 5

IV.     The Settlement Agreement Should Be Preliminarily Approved As Fair, Reasonable,
        And Adequate ......................................................................................................... 7

        A.      Standard And Process For Approval.............................................................. 7

        B.      The Settlement Should Be Preliminarily Approved ..................................... 8

                1.      The Class Representative And Class Counsel Have Adequately
                        Represented The Class ...................................................................... 8

                2.      The Proposal Was Negotiated at Arm's Length ............................... 9

                3.      The Relief Provided For The Class Is Adequate ........................... 10

                4.      The Proposal Treats Settlement Class Members Equitably Relative To
                        Each Other ...................................................................................... 13

                5.      The Proposed Notice To Settlement Class Members Is Adequate .......... 14

                6.      The Factual Record Was Well Developed Through Independent
                        Investigation And Discovery .......................................................... 14

V.      The Class Should Be Certified For Settlement Purposes...................................... 15

        A.      Rule 23(b)(3)............................................................................................... 15

                1.      Numerosity...................................................................................... 15

                2.      Commonality................................................................................... 15

                3.      Typicality ....................................................................................... 16

                4.      Adequacy Of Representation .......................................................... 16

        B.      Rule 23(b)(3)............................................................................................... 17

                1.      Predominance.................................................................................. 17

                2.      Superiority....................................................................................... 17

VI.     Conclusion ............................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Products v. Windsor,*
  521 U.S. 591 (1997)........................................................................................9, 18

*Bezdek v. Vibram USA Inc.,*
  79 F. Supp. 3d 324 (D. Mass.) .........................................................................10

*Cooley v. F.N.B. Corp.,*
  Case No. 10010, C.A. (Lawrence Cty., Pa.) ....................................................11

*In re Credit Suisse–AOL Sec. Litig.,*
  253 F.R.D. 17 (D. Mass. 2008)........................................................................16

*Cullen v. Whitman Med. Corp.,*
  197 F.R.D. 136 (E.D. Pa. 2000).......................................................................12

*Duhaime v. John Hancock Mutual Life Ins. Co.,*
  177 F.R.D. 54 (D. Mass. 1997).....................................................................9, 17

*Follansbee v. Discover Fin. Servs., Inc.,*
  No. 99 C 3827, 2000 WL 804690 (N.D. Ill. June 21, 2000) ...........................12

*Gorsey v. I.M. Simon & Co.,*
  121 F.R.D. 135 (D. Mass. 1988).......................................................................15

*Grace v. Perception Technology, Inc.,*
  128 F.R.D. 165 (D. Mass. 1989).......................................................................18

*Hall v. Capital One Auto Fin., Inc.,*
  Case No. 08-1181 (N.D. Ohio) .........................................................................11

*Hays v. Eaton Grp. Attorneys,*
  LLC, No. CV 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019).................8, 15

*Hochstadt v. Bos. Sci. Corp.,*
  708 F. Supp. 2d 95 (D. Mass. 2010) ..................................................................7

*Mitchell v. Prestige Fin. Servs.,*
  CV2010-090395 (Maricopa Cty., Ariz.)...........................................................11

*Natchitoches Parish Hosp. Service Dist. v. Tyco Int'l, Ltd.,*
  247 F.R.D. 253 (D. Mass. 2008).......................................................................16

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    296 F.R.D. 47 (D. Mass. 2013) ...........................................................................8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05MD1720, 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) ...........................7, 8, 9

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ......................................................................................14, 18

*Randle v. SpecTran*,
    129 F.R.D. 386 (D. Mass. 1988) .........................................................................18

*Tardiff v. Knox Cty.*,
    365 F.3d 1 (1st Cir. 2004) ..................................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ......................................................................................17

*Waste Mgt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ..............................................................................17

*Williams v. Am. Honda Fin. Corp.*,
    479 Mass. 656, 98 N.E.3d 169 (2018) ..................................................................4

*Williams v. Am. Honda Fin. Corp.*,
    858 F.3d 700 (1st Cir. 2017) ...............................................................................3

*Williams v. Am. Honda Fin. Corp.*,
    907 F.3d 83 (1st Cir. 2018) .................................................................................4

*Williams v. Am. Honda Fin. Corp.*,
    No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016) ........................3

## Statutes

G.L. 255B, § 1, *et seq.* ......................................................................... *passim*

G.L. c. 106, § 1, *et seq.* ....................................................................3, 4, 12, 16

G.L. c. 106, § 9-611(b) .............................................................................3

G.L. c. 106, § 9-614 ...............................................................................2, 4

G.L. c. 106, § 9-614(4) ..............................................................................3

G.L. c. 106, § 9-614(5) ..............................................................................3

G.L. c. 106, § 9-616 .............................................................................2, 3, 4

G.L. c. 255B, § 20B ................................................................................................3

G.L. c. 255B, § 20B(e)(1) ........................................................................................2

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................7

Fed. R. Civ. P. 23(a) .....................................................................................9, 15, 16

Fed. R. Civ. P. 23(a)(2) ..........................................................................................15

Fed. R. Civ. P. 23(a)(4) ..........................................................................................16

Fed. R. Civ. P. 23(b)(3) ....................................................................................15, 17

Fed. R. Civ. P. 23(c)(2) ..........................................................................................14

Fed. R. Civ. P. 23(e) .........................................................................................7, 14

Fed. R. Civ. P. 23(e)(1) .....................................................................................14, 15

Fed. R. Civ. P. 23(e)(2) ...............................................................................7, 8, 9, 13

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................................8, 9

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................9, 10

Fed. R. Civ. P. 23(e)(2)(C) .......................................................................10, 11, 12, 13

Fed. R. Civ. P. 23(e)(2)(C)(i) .................................................................................12

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................................13

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................13

Fed. R. Civ. P. 23(e)(3) .......................................................................................8, 10

**Other Authorities**

*Manual for Complex Litig. (Fourth)* ......................................................................15

## I.      Introduction

The Parties have reached a Settlement Agreement which will fully resolve this class

action litigation. Plaintiff Rachel Williams now seeks preliminary approval of the Agreement,

and an order directing notice to the Settlement Class and scheduling a final approval hearing.

The Settlement Agreement is attached as Exhibit 1 to the Motion.[1]

The Agreement provides substantial benefits to the class of Massachusetts borrowers

whose cars were repossessed by American Honda Finance Corp. ("Honda"). Under the

settlement, Honda will eliminate almost $20 million in outstanding deficiency balances and will

establish a Settlement Fund of $1.9 million to pay Settlement Class Members who made

payments on their alleged deficiency balances, along with court-approved attorneys' fees and

costs and an incentive payment. In addition, Honda will request that the credit reporting agencies

remove negative credit reporting on Honda accounts subject to this Action. Settlement Class

Members are not required to submit claim forms to obtain the benefits of the Agreement. Any

funds which cannot be distributed to Settlement Class Members will be paid to an appropriate

charitable organization approved by this Court, and will not revert to Honda.

The Agreement was negotiated at arm's length with the aid of an experienced mediator,

after substantial discovery, dueling summary judgment motions, an appeal to the First Circuit,

and the certification of novel issues of state law to the Supreme Judicial Court. Both Parties

entered negotiations with more than sufficient knowledge as to the strengths and weaknesses of

their claims. The Agreement negotiated by the Parties is fair, adequate, and reasonable, and

---

[1] Exhibit A to the Settlement Agreement is a proposed Order providing for conditional
certification of a settlement class, preliminary approval of the Settlement Agreement, issuance of
notice to Settlement Class Members, as well as scheduling of deadlines and a date for a hearing
on final approval. Exhibit B to the Settlement Agreement is the proposed Class Notice.

should be preliminarily approved. Honda does not oppose this motion.

## II.   Statement Of The Case

This class action challenges the notices Honda sent to Massachusetts borrowers after it repossessed their cars, and its calculation of deficiency balances.

Specifically, the Amended Complaint (ECF # 30) ("Complaint") alleged that Honda's form notices are defective because they tell consumers that their deficiency liability will be calculated and collected using the automobile's *sale price* obtained at auction, while Massachusetts law requires that the borrower be given credit for the car's *fair market value.* Massachusetts Retail Installment Sales Act ("MVRISA"), G.L. c. 255B, § 20B(e)(1). Ms. Williams's Complaint alleged Honda's notices violated the Massachusetts UCC, G.L. c. 106, §§ 9-614, 9-616 (which requires an accurate explanation of the deficiency), and Chapter 93A, in addition to the MVRISA. The Complaint further alleged that Honda's sales of repossessed cars did not yield fair market value. As a result, the Complaint alleged, Ms. Williams and the class were entitled to statutory damages, and were not liable for the claimed deficiency balances.

The facts of Ms. Williams's repossession and sale are representative. In September 2011 Honda repossessed Ms. Williams's car and sent her a post-repossession notice that advised her that Honda intended to sell the car at auction. The notice also described her deficiency liability as follows: "The money received from the sale (after paying our costs) will reduce the amount you owe. If the auction proceeds are less than what you owe, you will still owe us the difference." Ms. Williams's repossessed car was sold for $8,900 at auction in late October 2011. Honda then sent her a second notice in early November 2011 that advised her of the sale and of her deficiency balance, which it calculated by subtracting the price obtained at auction from her outstanding loan balance and adding repossession and sale costs.

Ms. Williams filed this class action in 2014 in the Suffolk Superior Court; Honda then

2

removed the action to this Court. ECF # 1. Following discovery, both Parties moved for summary judgment, and Magistrate Judge Boal recommended granting summary judgment in favor of Honda. Judge Boal agreed with Ms. Williams that under G.L. c. 255B, § 20B, the deficiency must be calculated using the fair market value of the collateral, but held that Honda's notices complied with the UCC because Honda used the UCC "safe harbor" repossession notice, and because there was insufficient evidence that Honda sold the vehicle for less than its fair market value. This Court adopted the magistrate's recommendation and entered judgment in favor of Honda. *See Williams v. Am. Honda Fin. Corp.*, No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016), *aff'd in part, vacated in part, rev'd in part*, 907 F.3d 83 (1st Cir. 2018).

Ms. Williams appealed, arguing that the applicable statute required the use of the "fair market value" when describing the deficiency and how the deficiency was calculated, and that Honda's practices and notices were non-compliant on their face. Acknowledging that a resolution of Plaintiff's claims would require the First Circuit to reconcile the MVRISA, G.L. c. 255B, § 20B, with provisions of the Massachusetts UCC, the First Circuit certified three state law questions to the Massachusetts Supreme Judicial Court.[2] *See Williams v. Am. Honda Fin.*

---

[2] The First Circuit certified the following three questions:

 (1) Whether the "fair market value" of collateral under Massachusetts General Laws chapter 255B, section 20B, is the fair market retail value of that collateral?

 (2) Whether, and in what circumstances, a pre-sale notice is "sufficient" under UCC section 9-614(4) and (5), and "reasonable" under UCC section 9-611(b), where the notice does not describe the consumer's deficiency liability as the difference between what the consumer owes and the "fair market value" of the collateral, and the transaction is governed by MVRISA?

 (3) Whether, and in what circumstances, a post-sale deficiency explanation is "sufficient" under UCC section 9-616 where the deficiency is not calculated based on the "fair market value" of the collateral, and the transaction is governed by MVRISA?

*Corp.*, 858 F.3d 700, 703 (1st Cir. 2017), *certified question answered*, 479 Mass. 656, 98 N.E.3d 169 (2018).

In June 2018, the Supreme Judicial Court issued an opinion that addressed the certified questions. *See Williams v. Am. Honda Fin. Corp.*, 479 Mass. 656, 98 N.E.3d 169 (2018). The court concluded that fair market value, not fair market *retail* value, is to be used when calculating a deficiency under the MVRISA. *Id.* at 176, 179–80.[3] The Supreme Judicial Court also concluded that the repossession notices required by UCC sections 9-614 and 9-616 "must describe the [debtor's] deficiency as the difference between the fair market value of the collateral and the debtor's outstanding balance." *Id.* at 179.

Applying these answers, the First Circuit reversed the district court's findings that Honda's notices complied with Massachusetts law, vacating the dismissal of Plaintiff's claims under chapter 93A and Massachusetts' version of the UCC. *See Williams v. Am. Honda Fin. Corp.*, 907 F.3d 83 (1st Cir. 2018).

After these developments, the Parties agreed to attempt to resolve this Action through mediation. Ms. Williams requested and was provided with detailed information concerning the size of the class. The Parties participated in a full day mediation with Bradley Honoroff of the Mediation Group in Brookline. Ms. Williams's counsel entered into settlement negotiations with substantial information about the nature and extent of the challenged practices and the merits of

---

[3] The court further concluded that "the Legislature did not dictate the creditor's market choice in the first instance." The court instructed that, in disputed cases, the estimated retail value as provided in periodically published trade journals establishes a rebuttable evidentiary presumption that allows a debtor to put the fair market value as originally determined by the creditor to the test. *Id.* at 174. The court explained that, if contested, a court must determine the fair market value based on all the facts and circumstances, including the goods to be sold, the relevant markets, the means, methods, and markets used to sell the vehicle, the particular creditors and debtors and their interests, and the rebuttable presumption of estimated retail value as provided in periodically published trade journals. *Id.* at 174-75, 180.

the legal claims and factual allegations. Exhibit 2, Declaration of Elizabeth Ryan ("Ryan Dec.")

¶ 18.

The Parties' negotiations resulted in the Agreement presently before the Court. Based on

their review and analysis of the relevant facts and legal principles, Ms. Williams and her counsel

believe that the terms and conditions of the Agreement are fair, reasonable, and adequate, and in

the best interests of the Plaintiff and the proposed Settlement Class. *Id*. ¶ 16. Honda denies all

liability, but has agreed to the settlement to avoid continued costs and the risks of litigation.

### III.    The Terms Of The Settlement

The material terms of the settlement include the following:

1.    *Settlement Class:* The Settlement Class is composed of: (a) all Massachusetts

residents who, between April 4, 2010, and July 26, 2018; (b) had a RISC[4] held by Honda; (c)

had their motor vehicle repossessed by Honda or its agents and were sent one or more

Massachusetts Repossession Notices (as defined by the Agreement); (d) have not

obtained a discharge in bankruptcy applicable to any such RISC; and (e) Honda has not

obtained a deficiency judgment against such person.

2.    *Relief for Settlement Class Members*: Following Final Approval:

    (i)    For all Settlement Class Members, the Parties agree that all alleged
Deficiency Balances, which total approximately $19,844,278, will be
eliminated;

    (ii)    Honda will pay $1,900,000 into a segregated account to be used to make
payments to Settlement Class Members who made payments on their
alleged Deficiency Balances, and to pay attorneys' fees and costs and an
incentive payment of $5,000 to the Class Representative, subject to Court
approval;

    (iii)    Settlement Class Members whose vehicles were sold by Honda and who

---

[4] Under the Settlement Agreement, "RISC" is defined as "a motor vehicle retail installment sales contract for the purchase of a motor vehicle in Massachusetts which is subject to Massachusetts statutes." Exhibit 1, Settlement Agreement, ¶ 1.21.

made payments to Honda of more than $5 after repossession will be entitled to a cash benefit equal to a *pro rata* share of the Settlement Fund after deducting attorneys' fees and costs and the incentive payment;

(iv)     Honda will request that the credit reporting agencies Equifax, Experian, TransUnion, and Innovis delete the reporting of Settlement Class Members' Honda accounts that are the subject of this Action in their entirety, which would include deletion of any delinquency reporting, any Deficiency Balance reporting, and any repossession reporting, by deleting the trade line for those accounts;

(v)     Honda will pay the costs of class notice and administration of the Settlement Agreement.

3.      *Notice and Administration*: Upon preliminary approval, the Settlement Administrator shall send notice to Settlement Class Members by first class mail in accordance with the the Agreement and the schedule contained in the Preliminary Approval Order. Further information will be available on a dedicated website and from the Settlement Administrator and Class Counsel. A proposed Notice is attached to the Settlement Agreement as Exhibit B.

4.      *Attorneys' Fees and Expenses*: The Settlement Agreement provides that Class Counsel intends to request that this Court award attorneys' fees and expenses in the amount of $950,000. Settlement Agreement, ¶ 3.05. Honda has agreed not to oppose to this request, as long as the attorneys' fees and expenses awarded do not exceed $950,000.

5.      *Incentive Award*: The Settlement Agreement provides that Honda will not oppose payment of an incentive award of $5,000 to Ms. Williams, to be paid from the Settlement Fund and subject to court approval.

6.      *Identification of Settlement Class Members*: Honda has represented that to the best of its knowledge based on researching its accounts, the Settlement Class encompasses approximately 4,183 members.

7.      *Release*: Settlement Class Members will release all claims that were or could have

6

been brought in the Action arising from the facts alleged in the Action.

## IV. The Settlement Agreement Should Be Preliminarily Approved As Fair, Reasonable, And Adequate

### A. Standard And Process For Approval

Rule 23(e) requires court approval of a class action settlement. Approval typically involves a "two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 106–07 (D. Mass. 2010). "[B]efore making a final decision on the 'approval' of a settlement, a court must first make a 'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Id.* (citing *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009), *and* Manual for Complex Litigation (Fourth) § 13.14).

The 2018 Amendments to Rule 23, effective December 1, 2018, provide additional guidance to federal courts considering whether to grant preliminary approval of a class action settlement. "[I]n weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)). Therefore, although the factors under Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court"—those factors being as follows:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)); *accord Hays v. Eaton Grp. Attorneys*, LLC, No. CV 17-88, 2019 WL 427331, at *4 (M.D. La. Feb. 4, 2019).

In addition, the "public interest" continues to "strongly favor[] the voluntary settlement of class actions," which means a "presumption in favor of finding the settlement fair, reasonable and adequate" remains, when sufficient discovery has been provided and the parties have bargained at arm's length. *Id.*

## B.    The Settlement Should Be Preliminarily Approved

Here, consideration of all relevant factors demonstrates that the settlement is likely to be finally approved under Rule 23(e)(2). It should therefore be preliminarily approved and notice should be issued.

### 1.    The Class Representative And Class Counsel Have Adequately Represented The Class

The adequacy determination under Rule 23(e)(2)(A) looks to whether the representative parties will "fairly and adequately protect the interests of the class" and whether class counsel is "qualified, experienced and able to vigorously conduct the proposed litigation." *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 53 (D. Mass. 2013); *accord In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 359981, at *15 (considering adequacy

requirement of newly amended Rule 23(e)(2) by looking to the interpretation of adequacy under Rule 23(a)); *see Amchem Products v. Windsor*, 521 U.S. 591 (1997) (courts look at whether representatives' interest are antagonistic to those of the class members). Where, as here, the injuries allegedly suffered by the named plaintiff are the same as those the class allegedly suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mutual Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997).

Ms. Williams has loyally and competently represented the putative class for the nearly five years of hard-fought litigation since this Action commenced. If she had not brought the case on behalf of others similarly situated, there would be no settlement benefits at all for the class. She has participated in the discovery process, including by providing written discovery responses. She has no interests that are antagonistic to or in conflict with the Settlement Class.

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. They have engaged in substantial discovery, litigated dueling summary judgment motions, and litigated a successful appeal to the First Circuit on complex and novel issues germane to the class claims, that involved certified questions to the Supreme Judicial Court. Class Counsel are seasoned class action practitioners whose lengthy experience in consumer, debtor, and class action litigation is demonstrated by the declaration attached to this memorandum. Ryan Dec. ¶¶ 5-15.

The "adequacy of representation" factor of Rule 23(e)(2)(A) is met.

## 2.    The Proposal Was Negotiated at Arm's Length

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a settlement is fair and reasonable when it was the result of arm's length negotiations between experienced, capable counsel after meaningful discovery. *See, e.g.*, *In re Payment Card Interchange Fee & Merch.*

*Disc. Antitrust Litig.*, 2019 WL 359981, at *19; *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length.").

Here, the Parties, through counsel, conducted arm's length negotiations to resolve this matter, after discovery, with the assistance of Bradley Honoroff, a highly experienced and well-respected mediator. Ryan Dec. ¶ 18. The Parties prepared memoranda in advance of the mediation, and the negotiations were productive and substantive, including discussions about the merits of Plaintiff's claims, and the repossession notices and damages calculations at issue. *Id.* ¶ 19.

The "arm's length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of preliminary approval.

### 3.      The Relief Provided For The Class Is Adequate

The proposed relief to the Settlement Class is also adequate. Rule 23(e)(2)(C) provides factors to guide what constitutes adequate relief:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(2)(C). The proposed settlement here provides significant, meaningful and immediate benefits to the Settlement Class, while avoiding potentially years of delays and the risks inherent in all class action litigation if the case were to go to trial.

- **The Settlement Agreement provides significant benefits to the Settlement Class**

The Settlement Agreement will, if approved, eliminate almost $20 million in alleged

Deficiency Balances, representing 100% of the claimed Deficiency Balances challenged in this case. Honda will establish a Settlement Fund of $1,900,000 to be used to pay refunds to eligible Settlement Class Members on a *pro rata* basis, after deduction for attorneys' fees, costs, and an incentive payment. Honda will also provide class-wide relief in the form of requesting removal of negative credit reporting on Honda accounts that are subject to this Action. The Settlement Fund is non-reversionary, ensuring that none of the money will be returned to Honda. If the Court approves counsel's requested fees, costs, and the incentive award, Ms. Williams estimates that each eligible Settlement Class Member (i.e., the 2,028 Settlement Class Members who paid at least $5 towards their alleged Deficiency Balance) will receive on average approximately $420, and in total approximately 60% of their deficiency payments. Ryan Dec. ¶ 22. And the average deficiency balance to be reduced to zero is $4,744. *Id.*

The relief offered by the settlement is more than adequate, particularly taking into account other similar settlements,[5] as well as the costs, risks, and delay that could result from a trial and appeals.

- **The effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims**

Here, no claims forms are required. Instead, all Settlement Class Members will automatically have their alleged Deficiency Balances eliminated and checks will be

---

[5] *See, e.g., Hall v. Capital One Auto Fin., Inc.*, Case No. 08-1181 (N.D. Ohio) (settlement approved on behalf of Ohio consumers sent defective repossession notices of $36 million in deficiency waivers and $1.5 million cash; average cash payment to class member after deduction for attorneys' fees of $285); *Mitchell v. Prestige Fin. Servs.,* CV2010-090395 (Maricopa Cty., Ariz.) (settlement approved for state-wide class of borrowers sent defective repossession notices; settlement involved waiver of deficiency balances and cash payments to class members averaging $350); *Cooley v. F.N.B. Corp.,* Case No. 10010, C.A. (Lawrence Cty., Pa.) (settlement for class of consumers sent defective repossession notices approved for $13 million in waiver of deficiency plus cash payments averaging $254).

automatically mailed to Settlement Class Members who made payments in excess of $5 towards their Deficiency balance. Settlement Agreement ¶ 3.01(b). The payment amount will be a *pro rata* share of the Settlement Fund after deduction for attorneys' fees and costs and any incentive payment. *Id.* In addition, because Honda will be updating addresses through IHS Markit/Polk, the Parties expect that the address list will be highly accurate.

This method of distributing relief is highly efficient and weighs in favor of granting settlement approval.

- **The terms of any proposed award of attorney's fees, including timing of payment**

Here, Class Counsel will apply for court approval of an award of attorneys' fees and expenses at the time of the Final Approval Hearing in a separate motion. Settlement Agreement, ¶ 5.07. Class Counsel intends to apply for an award of attorneys' fees and expenses in the amount of $950,000. *Id.* ¶ 3.05. This represents less than 5% of the total monetary benefits obtained for the Settlement Class including the alleged Deficiency Balances eliminated, $19,844,278.[6]

- **The costs, risks, and delay of trial and appeal**

Another factor in evaluating the adequacy of class relief is the costs, risks, and delay of trial and appeal. Rule 23(e)(2)(C)(i). This factor is particularly relevant here.

This case is legally complex and long-running. It involves a novel issue in Massachusetts courts – namely, how the notice provisions of the UCC interact with the repossession and

---

[6] In valuing a settlement, courts routinely consider forgiveness of debt or account credits in addition to cash. *See, e.g.*, *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (including cash and student loan debt forgiveness in valuing settlement for purposes of determining reasonable attorney's fees); *Follansbee v. Discover Fin. Servs., Inc.*, No. 99 C 3827, 2000 WL 804690, at *2 (N.D. Ill. June 21, 2000) (valuing settlement to include debt forgiveness and account credits, and evaluating fee against that value).

deficiency limitations of the MVRISA. Although Plaintiff was confident in her claims, no Massachusetts court had ever addressed these issues in a reported decision. Over the course of almost five years of litigation, the Parties filed multiple motions and briefs, including a motion to remand, motions for summary judgment, an appeal to the First Circuit, and certified questions to the Massachusetts Supreme Judicial Court. The Parties exchanged substantial discovery and class data. Even if Plaintiff were to win class certification and prevail at trial, post-trial motions and the potential for appeal could prevent Settlement Class Members from obtaining any recovery for years, if at all.

Ultimately, if approved by this Court, Settlement Class Members will receive substantial benefits now, without the burden and risks of further litigation. The "adequate relief" factor of Rule 23(e)(2)(C) weighs in favor of preliminary approval.

## 4.     The Proposal Treats Settlement Class Members Equitably Relative To Each Other

The final Rule 23(e)(2) consideration asks courts whether the proposed settlement treats "class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Here, the proposed settlement treats all Settlement Class Members equally and fairly, and the process for receiving settlement funds is simple. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (D). Every identified Settlement Class Member will be sent notice and an opportunity to opt out. Settlement Agreement, ¶¶ 5.02-5.06. All identified Settlement Class Members who do not opt out will have their alleged Deficiency Balances eliminated, and those who made payments will receive refunds on a *pro rata* basis, without the need to submit a claim form. *Id.* ¶ 3.01. If, after checks have been distributed, any amount remains in the Settlement Fund (due to uncashed checks), it will be donated to a charity. *Id.* ¶ 4.06. Accordingly, this factor supports granting preliminary approval.

### 5.      The Proposed Notice To Settlement Class Members Is Adequate

Settlement Class Members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. *Manual for Complex Litig. (Fourth),* § 21.31. Under Rule 23(e)(1), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

Here the proposed method of notification is patently adequate. The proposed Notice, attached as Exhibit B to the Settlement Agreement, is clear and straightforward, providing Settlement Class Members with enough information to evaluate whether to participate in the settlement, as well as directions to the settlement website which will include further information. Settlement Agreement ¶¶ 1.05, 4.02. The Settlement Administrator shall provide Notice to the Settlement Class within 45 days after Preliminary Approval in the following manner: (a) Honda shall compile an address list for the Settlement Class Members and update the list with any new addresses obtained from Honda's records or data from IHS Markit/Polk; and (b) the Notice shall then be sent by first class United States mail to the current addresses. *Id.* at ¶ 5.02. The Class Notice will advise Settlement Class Members of their rights to object and opt out and the requirements for doing so—consistent with the 2018 Amendments to Rule 23(e).

The proposed method of providing notice—direct first-class mail plus a settlement website—is more than adequate under Rule 23(c)(2). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (individual mailed notice which clearly describes the case and class members' rights meets due process requirements).

### 6.      The Factual Record Was Well Developed Through Independent Investigation And Discovery

Ultimately, to make a preliminary determination on the fairness of a proposed settlement

agreement, there must be sufficient information to evaluate it. *Manual for Complex Litig.*

*(Fourth)*, § 22.921; *Hays*, 2019 WL 427331, at *10–11 (evaluating proposed settlement under

newly amended federal rules).

Here, this litigation has been ongoing for almost five years, and the Parties have strongly

tested the merits through discovery and summary judgment motions, resulting in specific First

Circuit and Massachusetts Supreme Judicial Court guidance on the relevant issues. As recited

above, substantial discovery has been conducted, including exchanging requests for production,

interrogatories, and requests to admit, and the 30(b)(6) deposition of the Defendant. Class

Counsel have reviewed voluminous documents. Honda's counsel has also provided supplemental

information in the course of discussions leading up to the settlement negotiations, including

information about the size of the class and class-wide damages.

## V.   The Class Should Be Certified For Settlement Purposes

On a motion for preliminary approval, the parties must also show that the Court "will

likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P.

23(e)(1). The Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

### A.   Rule 23(b)(3)

#### 1.   Numerosity

The Settlement Class easily meets Rule 23(a)'s numerosity requirement. Honda has

represented that the class definition encompasses approximately 4,183 Settlement Class

Members. Joinder is a logistical impossibility. *See, e.g., Gorsey v. I.M. Simon & Co.*, 121 F.R.D.

135, 138 (D. Mass. 1988) (800 - 900 member class made joinder impracticable).

#### 2.   Commonality

Rule 23(a) requires that the proposed class share common questions of law or fact. Fed.

R. Civ. P. 23(a)(2). Commonality demands only the existence of a "single issue common to all

members of the class." *Natchitoches Parish Hosp. Service Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D.

253, 264 (D. Mass. 2008).

Here, the questions of law and fact in this litigation are not only common, they are

substantially identical among Settlement Class Members. Common legal issues include whether

Honda's repossession and deficiency notices violate Massachusetts's UCC, consumer protection

statutes under Chapters 93A and 93, and the MVRISA. And all material facts are the same. All

Settlement Class Members entered into a motor vehicle retail installment sales contract that was

held by Honda and was subject to Massachusetts law. Settlement Agreement, ¶¶ 1.21, 1.22. All

Settlement Class Members had their motor vehicles repossessed by or on behalf of Honda and

were sent one or more repossession notices. *E.g.*, Settlement Agreement, ¶ 1.22. Commonality is

met.

### 3. Typicality

Typicality requires that the class representative's "injuries arise from the same events or

course of conduct as do the injuries of the class." *In re Credit Suisse–AOL Sec. Litig.*, 253 F.R.D.

17, 23 (D. Mass. 2008). For virtually the same reasons discussed in the preceding section, this

element is also met.

Like all Settlement Class Members, Ms. Williams entered into a motor vehicle retail

installment sales contract held by Honda; her vehicle was repossessed by or on behalf of Honda,

and she was sent essentially the same repossession and deficiency notices. Rule 23(a)'s typicality

requirement is plainly met.

### 4. Adequacy Of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." For the same reasons described in Section IV(B)(1) above, Ms.

Williams and Class Counsel have and will adequately represent the Class.

### B.     Rule 23(b)(3)

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and that a class action

be superior to other available methods for the fair and efficient resolution of the controversy."

#### 1.        Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The inquiry

boils down to "whether the common, aggregation-enabling, issues in the case are more prevalent

or important than the non-common, aggregation defeating, individual issues." *Id.* (quoting W.

Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)).

Courts have routinely found common questions predominate where the claims relate to a

common course of conduct. *See, e.g., Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296

(1st Cir. 2000) (predominance satisfied by "sufficient constellation of common issues [that] bind

class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime*,

177 F.R.D. at 64 (requirement is "readily met" in consumer fraud cases where claim alleges

single course of conduct).

The predominance prong has been met here because the claims of the Class

Representative and the Settlement Class Members, and the circumstances under which these

claims arise, are virtually identical. The questions of law and fact are the same. There are no

significant individual issues.

#### 2.        Superiority

In determining whether a class action is superior to individual litigation, Rule 23(b)(3)

lists four factors: whether individuals have a strong interest in controlling potentially separate

actions; a class action's effect on competing litigation involving members of the class; whether resolution of the case in a single forum is desirable; and the potential difficulties that management of a class action presents. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

One reason that a class action is the superior method of proceeding in a case of this type is that it allows the plaintiff "to pool claims which would be uneconomical to litigate individually." *See Phillips Petroleum Co.*, 472 U.S. at 809. Here, each Settlement Class Member's claim is relatively small, making it uneconomic for individuals to pursue these claims on their own. *See Grace v. Perception Technology, Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386, 393 (D. Mass. 1988); *Tardiff v. Knox Cty.*, 365 F.3d 1, 7 (1st Cir. 2004) (superiority met where class action is only "feasible" means for most of class recovery).

Finally, any possible difficulties of managing a class action are vitiated by the fact of the Settlement Agreement. When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

## VI.    Conclusion

The proposed Settlement Agreement is fair, reasonable, and adequate. Ms. Williams requests that this Court approve the Settlement Agreement on a preliminary basis, schedule appropriate deadlines for various settlement requirements as reflected in the accompanying motion, and schedule a hearing to consider final approval of the settlement.

Dated: April 17, 2019

Respectfully submitted,

**Plaintiff,**
By her attorneys:

*/s/ Elizabeth Ryan*
Elizabeth Ryan, BBO # 549632
eryan@baileyglasser.com
John Roddy, BBO # 424240
jroddy@baileyglasser.com
BAILEY & GLASSER LLP
99 High Street, Suite 304
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)

Steven R. Striffler, BBO # 664224
Law Office of Steven R. Striffler
21 McGrath Highway, Suite 301
Quincy, MA 02169
(617) 290-1573
(866) 314-2716 (fax)

## **Certificate Of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on April 17, 2019.

*/s/ Elizabeth Ryan*
Elizabeth Ryan