## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **RACHEL C. WILLIAMS**, on behalf of herself and others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>**AMERICAN HONDA FINANCE CORP.**,<br><br>       Defendant. | Civil Action No. 1:14-cv-12859-LTS |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................. 1

    A.    Key Terms Of The Settlement ........................................................... 6

    B.    Notice Reached 96% Of The Class; There Were No Objections And No Opt-Outs ........................................................................................... 7

III.  Argument ..................................................................................................... 9

    A.    The Settlement Is Fair, Reasonable, And Adequate And Should Be Approved ........................................................................................... 9

        1.    The Relief Obtained Is Substantial, Especially Taking Into Account The Risk, Complexity, Expense and Duration of The Litigation ................................................................................. 11

        2.    No Settlement Class Member Objected To The Settlement Or Opted Out ........................................................................ 14

        3.    The Factual Record Was Well Developed Through Independent Investigation And Discovery And Produced A Fair and Reasonable Settlement ........................................ 14

        4.    All Of the Relevant Rule 23(e)(2) Considerations Support Approval ..................................................................... 15

            a.    The Proposed Settlement Was Negotiated At Arm's Length ..................................................... 15

            b.    Settlement Benefits Are Automatic ........................................ 16

            c.    The Class Representative And Class Counsel Have Adequately Represented The Class ........................ 16

    B.    The Class Is Appropriately Certified For Settlement Purposes ................. 17

IV.   Conclusion .................................................................................................. 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bezdek v. Vibram USA Inc.*,
　79 F. Supp. 3d 324 (D. Mass. 2015) ........................................................................11, 12, 15

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
　No. 09–civ–2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ...........................................12

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001)..................................................................................................12

*Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974)..................................................................................................10

*Durrett v. Housing Auth. of City of Providence*,
　896 F.2d 600 (1st Cir. 1990) ...................................................................................................9

*Gulbankian v. MW Mfrs., Inc.*,
　C.A. No. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) ..............................14

*Hays v. Eaton Grp. Attorneys, LLC*,
　No. CV 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019).................................14

*Lazar v. Pierce*,
　757 F.2d 435 (1st Cir. 1985) ...................................................................................................9

*In re Lupron Mktg. & Sales Practices Litig.*,
　228 F.R.D. 75 (D. Mass. 2005)..........................................................................................9, 10

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*,
　582 F.3d 30 (1st Cir. 2009)................................................................................................9, 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
　330 F.R.D. 11 (E.D.N.Y. 2019) .............................................................................................15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
　588 F.3d 24 (1st Cir. 2009) .....................................................................................................9

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985).................................................................................................................8

*In re Relafen Antitrust Litig.*,
　231 F.R.D. 52 (D. Mass. 2005) .........................................................................................10, 11

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000).............................................................................14

*In re Tyco Int'l, Ltd. Mutidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)..................................................................12

*Voss v. Rolland*,
    592 F.3d 242 (1st Cir. 2010).............................................................................11

*Walsh v. Popular, Inc.*,
    839 F. Supp. 2d 476 (D.P.R. 2012)..................................................................11

*Williams v. Am. Honda Fin. Corp.*,
    479 Mass. 656 (2018) ..............................................................................4, 5, 13

*Williams v. Am. Honda Fin. Corp.*,
    858 F.3d 700 (1st Cir. 2017)........................................................................4, 13

*Williams v. Am. Honda Fin. Corp.*,
    907 F.3d 83 (1st Cir. 2018)..........................................................................5, 13

*Williams v. Am. Honda Fin. Corp.*,
    No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016) ...................4, 13

**Statutes**

G.L. c. 93A....................................................................................................3, 5, 13, 17

G.L. c. 106, § 9-611(b) ...............................................................................................4

G.L. c. 106, § 9-614 ..............................................................................................2, 4

G.L. c. 106, § 9-616 ..............................................................................................2, 4

G.L. c. 255B, § 20B ..............................................................................................3, 4

G.L. c. 255B, § 20B(e)(1) ..........................................................................................2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

**Other Authorities**

Manual for Complex Litig. (Fourth) (2004) ..........................................................7, 14

# I.     Introduction

On April 16, 2019, Plaintiff Rachel C. Williams and Defendant American Honda Finance Corporation ("Honda") (collectively "the parties") agreed to a binding settlement to resolve this class action. ECF # 104-1. Under the proposed settlement, Honda will eliminate $19,844,278 in outstanding Deficiency Balances and will fund a non-reversionary $1,900,000 Settlement Fund.[1] Subject to Court approval, the Settlement Fund will be used to make payments to Settlement Class Members who paid at least $5 toward their deficiencies, after deductions for Court-approved attorneys' fees and an incentive payment.

In addition, Honda will request that credit reporting agencies remove negative credit reporting on all Honda accounts subject to this Action and fund the cost of notice and administration. Settlement Class Members were not required to submit claim forms to obtain the benefits of the Agreement; the benefits will be provided automatically. Any funds which cannot be distributed to Settlement Class Members will be paid to an appropriate charitable organization approved by this Court, and will not revert to Honda.

The Settlement Agreement is now subject to final approval by the Court. All the relevant factors that support approval are met here. The settlement provides significant relief, particularly given the risk and expense of continued litigation. It ensures that Cash Refund Eligible Settlement Class Members are compensated without delay and

---

[1] Capitalized terms are defined in the Settlement Agreement.

eliminates the risk of loss at trial or on appeal. Having litigated for more than five years, through summary judgment, an appeal to the First Circuit, certified questions to the Supreme Judicial Court of Massachusetts, then back to the First Circuit, the parties are fully apprised of the strengths and weaknesses of their respective claims and defenses. And the settlement was negotiated at arm's length, with the assistance of an experienced class action mediator, Brad Honoroff of The Mediation Group.

The Settlement Agreement was preliminarily approved on April 18, 2019. ECF # 107. Ms. Williams now requests that the Court finalize its preliminary certification of the Settlement Class and approve the settlement as fair, reasonable and adequate. A proposed order, filed with the Court at preliminary approval, is attached as Exhibit 2.

## II.      BACKGROUND

This class action challenges the notices Honda sent to Massachusetts borrowers after it repossessed their cars, and its calculation of deficiency balances after the repossessed cars were sold.

Specifically, the Amended Complaint (ECF # 30) ("Complaint") alleges that Honda's form notices (which have since been revised) were defective because they told borrowers that their deficiency liability would be calculated using the car's sale price obtained at auction. Massachusetts law requires that borrowers be given credit for the car's "fair market value," which Plaintiff alleges is different from the sale price at auction. *See* Motor Vehicle Retail Installment Sales Act ("MVRISA"), G.L. c. 255B, § 20B(e)(1). The Complaint alleges that because of this defect, Honda's notices violated the Massachusetts UCC, G.L. c. 106, §§ 9-614, 9-616 (which requires an accurate

explanation of the deficiency), and Chapter 93A, in addition to the MVRISA. The Complaint further alleges that Honda's sales of repossessed cars did not yield fair market value. As a result, Ms. Williams and the class sought statutory damages and a ruling that they were not liable for the claimed deficiency balances.

The facts of Ms. Williams's repossession and sale are representative. In September 2011 Honda repossessed Ms. Williams's car and sent her a post-repossession notice that advised her that Honda intended to sell the car at auction. The notice also described her deficiency liability as follows: "The money received from the sale (after paying our costs) will reduce the amount you owe. If the auction proceeds are less than what you owe, you will still owe us the difference." Ms. Williams's repossessed car was sold for $8,900 at auction. Honda then sent her a second notice that advised her of the sale and of her deficiency balance, which it calculated by subtracting the price obtained at auction from her outstanding loan balance and adding repossession and sale costs. ECF # 30-3.

Ms. Williams filed this class action in 2014 in the Suffolk Superior Court, and Honda removed the action to this Court. ECF # 1. Following discovery, both parties moved for summary judgment, and Magistrate Judge Boal recommended granting summary judgment in favor of Honda. Judge Boal agreed with Ms. Williams that under G.L. c. 255B, § 20B, the deficiency must be calculated using the fair market value of the collateral, but held that Honda's notices complied with the UCC because it used the UCC "safe harbor" repossession notice, and because there was insufficient evidence that Honda sold the vehicle for less than its fair market value. ECF # 74. This Court

adopted the magistrate's recommendation and entered judgment in favor of Honda. *See Williams v. Am. Honda Fin. Corp.*, No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016), *aff'd in part, vacated in part, rev'd in part*, 907 F.3d 83 (1st Cir. 2018).

Ms. Williams appealed to the First Circuit, arguing that the MVRISA required the use of the phrase "fair market value" when describing the deficiency and how it was calculated, and that Honda's practices and notices were non-compliant on their face. Case No. 16-1275. The First Circuit then certified three state law questions to the Massachusetts Supreme Judicial Court.[2] *See Williams v. Am. Honda Fin. Corp.*, 858 F.3d 700, 703 (1st Cir. 2017).

In June 2018, after briefing and argument, the Supreme Judicial Court issued an opinion on the certified questions. *See Williams v. Am. Honda Fin. Corp.*, 479 Mass. 656, 98 N.E.3d 169 (2018). The SJC concluded that the repossession notices required by UCC sections 9-614 and 9-616 "must describe the [debtor's] deficiency as the difference between the fair market value of the collateral and the debtor's outstanding balance."

---

[2] The First Circuit certified the following three questions:

(1) Whether the "fair market value" of collateral under Massachusetts General Laws chapter 255B, section 20B, is the fair market retail value of that collateral?

(2) Whether, and in what circumstances, a pre-sale notice is "sufficient" under UCC section 9-614(4) and (5), and "reasonable" under UCC section 9-611(b), where the notice does not describe the consumer's deficiency liability as the difference between what the consumer owes and the "fair market value" of the collateral, and the transaction is governed by MVRISA?

(3) Whether, and in what circumstances, a post-sale deficiency explanation is "sufficient" under UCC section 9-616 where the deficiency is not calculated based on the "fair market value" of the collateral, and the transaction is governed by MVRISA?

*Id.* at 179.[3]

Applying these answers, the First Circuit reversed the district court's findings that Honda's notices complied with Massachusetts law and vacated the dismissal of Plaintiff's claims under chapter 93A and Massachusetts' version of the UCC. *See Williams v. Am. Honda Fin. Corp.*, 907 F.3d 83 (1st Cir. 2018).

After these developments, the parties agreed to attempt to resolve this Action through mediation. Ms. Williams requested detailed information about the size of the class and potential damages from Honda. The parties participated in a day-long mediation with Bradley Honoroff of The Mediation Group in Brookline. Ms. Williams's counsel entered into settlement negotiations with substantial information about the nature and extent of the challenged practices and the merits of the legal claims and factual allegations. Declaration of Elizabeth Ryan in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action ("Ryan Decl."), ECF # 104-2, ¶ 18.

The parties' negotiations resulted in the Agreement now before the Court. Based on their analysis of the relevant facts and legal principles, Ms. Williams and her counsel believe that the terms and conditions of the Agreement are fair, reasonable, and adequate, and in the best interests of the Plaintiff and the proposed Settlement Class. *Id.* ¶ 16. Honda denies all liability, but has agreed to the settlement to avoid the continued costs and risks of litigation.

---

[3] The SJC rejected the argument that a sale price at auction could not equate to "fair market value." *Id.* at 174.

## A.      Key Terms Of The Settlement

The full text of the Settlement Agreement is on file with the Court, ECF # 104-1.

The key terms are summarized below.

(1)      *Settlement Class:* The Settlement Class is composed of all Massachusetts

residents who, between April 4, 2010, and July 26, 2018:

>       (a)      had a RISC [retail installment sales contract] held by Honda;
>
>       (b)      had their motor vehicle repossessed by Honda or its agents and
>       were sent one or more Massachusetts Repossession Notices;
>
>       (c)      have not obtained a discharge in bankruptcy applicable to any
>       such RISC; and
>
>       (d)      Honda has not obtained a deficiency judgment against such
>       person.

(2)      *Monetary relief.* Honda will eliminate the Deficiency Balances of all

Settlement Class Members, which total approximately $19,844,278. Honda will also

establish a $1,900,000 Settlement Fund to make *pro rata* payments to Settlement Class

Members whose accounts reflect Deficiency Payments in excess of five dollars and

whose Class Notice is not returned as undeliverable, after deduction for attorneys' fees

and expenses, costs of notice and administration, and Plaintiff's incentive award.

(3)      *Notice and Administration*: Honda mailed notice to Settlement Class

Members in accordance with the schedule in the Preliminary Approval Order, and also

established a settlement website in accordance with the terms of the Agreement. See

Affidavit of Ingrid Fernandez ("Fernandez Aff."), Exhibit 1, ¶¶ 5-6, 8.

(4)      *Attorneys' Fees and Expenses*: The Settlement Agreement provides that

Class Counsel will request an award of attorneys' fees and expenses in the amount of

$950,000. The Notice advised Settlement Class Members of the amount Class Counsel would seek.

(5)     *Incentive Award*: The Settlement Agreement provides that Ms. Williams will request an aggregate incentive award of $5,000 to be paid from the Settlement Fund, subject to Court approval. The grounds for this request are discussed below. The Notice informed Class Members of the amount of the requested incentive award.

(6)     *Identification of Class Members*: Honda has represented that based on reviewing its records, it has identified 4,183 Settlement Class Members.

(7)     *Release*: Settlement Class Members and Released Persons shall mutually release the claims, liens, demands, causes of action, obligations, damages, and liabilities arising out of the claims based upon the facts alleged in the Action. Settlement Agreement, ¶ 6.01.

## B.     Notice Reached 96% Of The Class; There Were No Objections And No Opt-Outs

Class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. Manual for Complex Litig. (Fourth), § 21.31 (2004). Under Rule 23(e)(1), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." The Notice Plan approved by the Court was implemented by the parties, and Honda mailed the Class Notice to 4,183 Settlement Class Members, Fernandez Aff. ¶ 5. This mailing reached 4,001 Class Members, 96% of the total. *Id*. ¶ 8.

The Notice, attached to the Fernandez Affidavit as Exhibit A, is clear and straightforward, providing Settlement Class Members with enough information to evaluate whether to participate in the settlement, as well as directions to the settlement website, which provides detailed further information. Settlement Agreement ¶ 4.03. The Notice advised Settlement Class Members how to opt out (¶ 5.05) and of their rights to object and requirements for doing so—consistent with the 2018 Amendments to Rule 23(e). This notice is adequate under Rule 23(c)(2). *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (individual mailed notice which clearly describes the case and class members' rights meets due process requirements).

Honda established a settlement website with detailed information about the settlement. Fernandez Aff. ¶ 9. The website address, www.AHFCMassachusettsSettlement.com, was printed on all notices. *Id.* ¶ 10. The website provides links to key documents, lists important deadlines, and explains class members' rights and options. *Id.* ¶ 9. The website also provided a toll-free number that class members could call. *Id.* ¶ 11. The toll-free number received 44 calls as of September 5, 2019. *Id.*

The reaction of the Class has been overwhelmingly positive. There have been no objections to the settlement, and no Class Members have opted out. *Id.* ¶ 10.

If the Court awards the requested attorneys' fees, costs, and incentive award, a total of $945,000 will be distributed to Cash Refund Eligible Settlement Class Members whose Class Notice was not returned as undeliverable. These Settlement Class Members will receive an average payment of $420. Ryan Decl., ECF # 104-2, ¶ 22.

8

## III.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate And Should Be Approved

Courts favor class action settlements. *See Lazar v. Pierce*, 757 F.2d 435, 439 (1st Cir. 1985); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005); *Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (citing "long-recognized policy of encouraging settlements"). A settlement agreement is presumed to be fair if it follows sufficient discovery and genuine, arm's-length negotiations. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) (where "the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable"); *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

To be approved, a class action settlement must be fair, adequate, and reasonable. The 2018 Amendments to Rule 23, effective December 1, 2018, provide direction to courts considering whether to approve such a settlement. Rule 23(e)(2) provides that the court should consider whether:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing

of payment;[4] and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Ms. Williams will address each of these factors, many of which overlap.[5]

Prior to the 2018 amendments to Rule 23, courts in this district looked to factors derived from lists established by other circuits. One such list is from the Second Circuit's decision in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), overruled on other grounds by *Missouri v. Jenkins*, 491 U.S. 274 (1989). *See New Eng. Carpenters Health Benefits Fund,* 602 F. Supp. 2d at 281 (citing and applying *Grinnell* factors); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (same); *Lupron,* 228 F.R.D. at 93– 94 (same). These factors include: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell,* 495 F.2d at 463.[6]

---

[4] Class Counsel address the reasonableness of their requested attorneys' fees and expenses of $950,000 in a separate, contemporaneous filing.
[5] There is no agreement that Rule 23(e)(3)(C)(iv) requires to be identified.
[6] The *Relafen* court identified a pared down list of similar factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality

Ultimately, the decision whether to approve the settlement "involves balancing the advantages and disadvantages of the proposed settlement against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 480 (D.P.R. 2012). The court enjoys "great discretion to 'balance [a settlement's] benefits and costs' and apply [the] general standard." *Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010) (citing *New England Carpenters Ass'n*, 582 F.3d at 45). That balancing, along with all other relevant considerations, supports a finding that the settlement is fair, reasonable, and adequate.

### 1. The Relief Obtained Is Substantial, Especially Taking Into Account The Risk, Complexity, Expense and Duration of The Litigation.

Both the case law and Rule 23(e) require the Court to consider the reasonableness and adequacy of the amount obtained under the settlement, considering the potential outcome and the risk of not prevailing. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 345 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

The amount provided by the settlement—nearly $20 million in Deficiency Balances waived and a cash payment of $1,900,000, along with the credit reporting relief—is substantial. The Settlement Fund is non-reversionary, ensuring that none of the money will be returned to Honda. If the Court approves counsel's requested fees and the incentive award, each eligible Settlement Class Member (i.e., the 2,028 Settlement Class Members who paid at least $5 towards their alleged Deficiency

---

of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. *Relafen,* 231 F.R.D. at 72, quoting *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003).

Balance) will receive on average approximately $420, and in total approximately 60% of their Deficiency Payments. *See* Ryan Decl., ECF # 104-2, ¶ 22. And the average Deficiency Balance to be reduced to zero is $4,744. *Id.* That is $4,744 that Class Members will not have to pay.

A recovery in that range is more than reasonable. *See Bezdek*, 79 F. Supp. 3d at 345 (finding settlement that provided payment of 9% of purchase price for footwear was reasonable; worst case scenario was no recovery, best case was 100% of purchase price); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 09–civ–2067, 2014 WL 4446464, at *7 (D. Mass. Sept. 8, 2014) ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 261 (D.N.H. 2007) (settlement that provides approximately 27% of the alleged damages to the class is "outstanding" result). As Judge Woodlock wrote in *Bezdek*, "[s]ettlement is, of course, 'a compromise, a yielding of the highest hopes in exchange for certainty and resolution,' *Gen. Motors,* 55 F.3d at 806, and the benefit to both parties is that they will avoid the outcome embodying their worst nightmares after taking the case to trial." 79 F. Supp. 3d at 346.

The results obtained here are even more remarkable considering the risk involved. While Ms. Williams is confident in her claims, litigation is always risky, expensive, and time consuming. *See In re Cendant Corp. Litig.,* 264 F.3d 201, 233 (3d Cir. 2001) (this factor "captures 'the probable costs, in both time and money, of continued litigation"). This is particularly true here where there was no reported decision addressing the claims raised, which were initially dismissed and judgment was entered

for Honda. *See Williams v. Am. Honda Fin. Corp.*, No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016), *aff'd in part, vacated in part, rev'd in part*, 907 F.3d 83 (1st Cir. 2018). The SJC's and First Circuit's decisions ultimately revived Ms. Williams's claim that the notices should have used the phrase "fair market value" But even after those rulings, Honda still would have contested class certification, liability, and damages on all available grounds, and there was no guarantee that Ms. Williams would have ultimately prevailed.

Ms. Williams appealed to the First Circuit, which after oral argument certified to the Supreme Judicial Court state law questions which had not been previously addressed in any reported decision. *See Williams v. Am. Honda Fin. Corp.*, 858 F.3d 700, 703 (1st Cir. 2017), *certified question answered*, 479 Mass. 656, 98 N.E.3d 169 (2018).

In June 2018, the Supreme Judicial Court issued its opinion, concluding that fair market value must be used when calculating a deficiency under the MVRISA, and UCC repossession "must describe the [debtor's] deficiency as the difference between the fair market value of the collateral and the debtor's outstanding balance." *See Williams v. Am. Honda Fin. Corp.*, 479 Mass. 656, 98 N.E.3d 169, 179 (2018). Applying these answers, the First Circuit reversed the finding that Honda's notices complied with Massachusetts law, vacating the dismissal of Plaintiff's chapter 93A and UCC claims. *See Williams v. Am. Honda Fin. Corp.*, 907 F.3d 83 (1st Cir. 2018).

At any point in this process Ms. Williams could have lost and the class would have received nothing. If the First Circuit or SJC had ruled differently there would be no settlement.

This case was not only risky and complex, it has been lengthy and expensive to prosecute. Over the past four and a half years, Class Counsel has invested more than 825 hours of attorney time, for a total of nearly $570,000 in fees. They have incurred over $10,900 in expenses. Continued litigation, including a lengthy trial, would have driven costs even higher. And Honda is a well-financed corporation, with the financial ability and legal wherewithal to aggressively pursue its defenses for years.

The uncertainty of litigation, including possible further appeals, and the fact that the settlement provides Settlement Class Members with significant benefits now, rather than months or years from now, supports approval. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) (certainty of recovery through settlement in contrast to the expense, length, and uncertainty of litigation is a strong argument in favor of settlement).

### 2.    No Settlement Class Member Objected To The Settlement Or Opted Out

The Class's positive response to the settlement strongly supports its fairness. *See Gulbankian v. MW Mfrs., Inc.*, C.A. No. 10-10392-RWZ, 2014 WL 7384075, at *2 (D. Mass. Dec. 29, 2014) (small number of objections indicates positive response), citing *In re Luprон Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005).

### 3.    The Factual Record Was Well Developed Through Independent Investigation And Discovery And Produced A Fair and Reasonable Settlement

To assess the fairness of a proposed settlement, there must be sufficient information. *Manual for Complex Litig.* (Fourth), § 22.921 (2004); *Hays v. Eaton Grp. Attorneys, LLC*, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *10–11 (M.D. La. Feb. 4,

14

2019) (evaluating proposed settlement under newly amended federal rules).

Here, this litigation has been ongoing for almost five years, and the parties have tested the merits through discovery and summary judgment motions, resulting in specific First Circuit and Massachusetts Supreme Judicial Court guidance on the relevant issues. Discovery has included exchanging documents, interrogatories, and requests to admit, and the 30(b)(6) deposition of Honda. Class Counsel have reviewed voluminous documents. Honda's counsel has also provided supplemental information in the course of discussions leading up to the settlement negotiations, including information about the size of the class and potential class-wide damages.

### 4.    All Of the Relevant Rule 23(e)(2) Considerations Support Approval

#### a.    The Proposed Settlement Was Negotiated At Arm's Length

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations between experienced, capable counsel after meaningful discovery. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 19 (E.D.N.Y. 2019); *Bezdek*, 79 F. Supp. at 343 ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length.").

Here, the parties, through counsel, conducted arm's length negotiations to resolve this matter, after discovery, with the assistance of Bradley Honoroff, a highly experienced and well-respected mediator. Ryan Decl., ECF # 104-2, ¶ 18. The parties

prepared memoranda in advance of the mediation, and the negotiations were robust and substantive. *Id.* ¶ 19.

The "arm's length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of final approval.

### b.      Settlement Benefits Are Automatic

The proposed method for distributing relief to Settlement Class Members is effective and equitable. No claim forms are required. Instead, all Settlement Class Members will automatically have their alleged Deficiency Balances eliminated, and checks will be automatically mailed to Settlement Class Members who made payments in excess of $5 towards their Deficiency Balance. *See* Settlement Agreement ¶ 3.01(b). The payment amount will be a *pro rata* share of the Settlement Fund after deducting attorneys' fees and costs and any incentive payment. *Id.* In addition, because Honda updated addresses through IHS Markit/Polk, Fernandez Aff. ¶ 6, the parties expect that the address list is highly accurate.

This method of distributing relief is highly efficient and weighs in favor of granting final approval.

### c.      The Class Representative And Class Counsel Have Adequately Represented The Class

As discussed in Plaintiff's Memorandum in Support of Preliminary Approval, ECF # 105 at 8-9, both Ms. Williams and Class Counsel have effectively and diligently served the Class. Ms. Williams has been an exemplary representative. She has loyally and competently represented the putative class for the five years of hard-fought

litigation since this Action commenced. If she had not brought the case, there would be no settlement benefits at all for the class. She has participated in the discovery process, including by providing written discovery responses. She has no interests that are antagonistic to or in conflict with the Settlement Class.

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. They have engaged in substantial discovery, litigated dueling summary judgment motions, and litigated a successful appeal to the First Circuit on complex and unresolved issues germane to the class claims that involved certified questions to the Supreme Judicial Court. Class Counsel are seasoned class action practitioners whose lengthy experience in consumer, debtor, and class action litigation is demonstrated by the declaration attached to this memorandum. Ryan Decl., ECF # 104-2, ¶¶ 5-15.

**B.      The Class Is Appropriately Certified For Settlement Purposes**

The Court conditionally certified the Settlement Class for settlement purposes when it granted preliminary approval of the settlement. ECF # 107. For all of the reasons contained in the brief in support of preliminary approval, ECF # 105, which have not changed, the Settlement Class meets all requirements of Rules 23(a) and 23(b)(3), and should be finally certified for settlement purposes. The Settlement Class is sufficiently numerous because it includes approximately 4,183 Settlement Class Members, satisfies commonality because questions about whether Honda's notices violate Massachusetts's UCC, consumer protection statutes under Chapter 93A, and the MVRISA are substantially identical among Settlement Class Members, satisfies

typicality and adequacy because Ms. Williams' claims arise from the same facts as other

Settlement Class Members and she has no conflict with the Settlement Class. In

addition, predominance is satisfied because the claims of Ms. Williams and the

Settlement Class Members, and the circumstances under which these claims arise, are

virtually identical and predominate over any individual issues.

## IV.    Conclusion

For the foregoing reasons, the Settlement Agreement should be approved.

Date: September 11, 2019

**Plaintiff,**
By her attorneys:

*/s/ Elizabeth Ryan*
Elizabeth Ryan, BBO # 549632
eryan@baileyglasser.com
John Roddy, BBO # 424240
jroddy@baileyglasser.com
Bailey & Glasser LLP
99 High Street, Suite 304
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)

Steven R. Striffler, BBO # 664224
Law Office of Steven R. Striffler
21 McGrath Highway, Suite 301
Quincy, MA 02169
(617) 290-1573
(866) 314-2716 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic File

(NEF) on September 11, 2019.

> */s/ Elizabeth Ryan*
> Elizabeth Ryan